UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| FAY RUGGLES, ANTOINETTE BOONE, and GEORGIA WOODRUFF, on behalf of themselves and all other similarly situated employees, | : : : 1:08-CV-0201 LEK/RFT : : |
| Plaintiffs, | : : |
| v. | : : |
| WELLPOINT, INC., | : : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION AND COURT AUTHORIZED NOTICE PURSUANT TO THE FLSA, 29 U.S.C § 216**

Dated:  New York, New York
         June 13, 2008

Motion Date:  On Submit

Oral argument requested

Kenneth Sulzer (#515087)
ksulzer@seyfarth.com
Brett C. Bartlett (#4438149)
bbartlett@seyfarth.com
James R. Cho (#514276)
jcho@seyfarth.com
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
212-218-5500
212-218-5526 (fax)

Attorneys for Defendant

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................1

PROCEDURAL HISTORY.......................................................................................2

    A.    *Johnson v. WellPoint*:  Federal District Court Denies Conditional Certification In a Similar Case Involving The Same Jobs At Issue Here .........................................2

    B.    Plaintiffs' Seek A Different Result In This Case...................................................3

STATEMENT OF FACTS ........................................................................................4

    A.    WellPoint's Complex Business And Operating Structure .......................................4

    B.    Significant Differences Among Putative Class Members .......................................5

        1.    Despite Their Status As RNs, WellPoint Does Not Pay All Utilization Review, Medical Management Or Case Management Nurses As Salaried Exempt Employees, But Rather Pays Many Of Them Hourly And Compensates Them For Overtime As The FLSA Permits..........................6

        2.    Variations In Job Duties.................................................................7

            a.    Utilization Review And Medical Management Nurses ..................7

            b.    Case Management Nurse ......................................................9

            c.    Vast Differences In Job Duties Exist Among Individuals Whom Plaintiffs Would Claim To Represent...........................................10

    C.    Registered Nurses Are Exempt Employees .....................................................12

    D.    Named Plaintiffs, Declarants and Other Opt-In Plaintiffs ....................................13

ARGUMENT.......................................................................................................14

    A.    Collective Actions Under The FLSA................................................................14

    B.    Plaintiffs Fail To Satisfy The Standard For Conditional Class Certification ........15

        1.    Plaintiffs Have Failed To Establish The Existence Of A Common Policy, Practice Or Scheme That Violates The FLSA ...........................16

        2.    Plaintiffs' Motion Fails To Establish That They Are "Similarly Situated" To Other Members Of The Putative Class.................................17

            a.    Fact-Specific Inquiry Necessary To Determine The Exempt Status Of The RNs Militates Against Conditional Certification .............20

C.      Even If Conditional Certification Were Appropriate (Which It Is Not), The Scope Of The Class Would Have To Be Substantially Limited......................................22

D.      Further Notice To Putative Class Members Is Inappropriate Because Plaintiffs' Counsel Has Already Sent Out Numerous Unauthorized Notices........................23

        1.      Plaintiffs' Premature Notice To Putative Class Plaintiffs........................23

E.      Even If The Court Were To Conditionally Certify A Class, Plaintiffs' Proposed Notice Is Inappropriate ...........................................................................................24

CONCLUSION.......................................................................................................................25

Defendant, WellPoint, Inc. ("WellPoint"), hereby submits this Brief in Opposition to Plaintiffs' Motion for Conditional Class Certification and Court Authorized Notice Pursuant To the FLSA, 29 U.S.C. § 216(b).

## PRELIMINARY STATEMENT[1]

In Plaintiffs' haste to seek conditional certification prior to engaging in any discovery, they have sought to certify a disparate class of nurses employed by WellPoint's numerous business units located across the country. This group – defined by Plaintiffs as all "utilization review, case management and medical management nurses or any other call center nurse performing substantially similar job duties who worked for WellPoint"[2] – share little in common. Pls. Mot. at 1. They are employed in vastly different positions, work in a multitude of environments, have held ever-changing roles given WellPoint's numerous mergers and acquisitions, and are even paid differently. This diverse group is not suitable for collective treatment and Plaintiffs' motion fails on several fundamental grounds. First, and perhaps most telling, a federal district court recently denied conditional certification in a virtually identical case against WellPoint involving the same issues and the same positions. *See Johnson v. WellPoint, Inc.*, No. 1:06-cv-2430. The result here should be no different.

Second, Plaintiffs' primary argument in support of conditional certification – that all the putative class members are paid the same (salaried and not eligible for overtime) – is inaccurate.

---

[1] References to Plaintiffs' Motion for Conditional Class Certification and their memorandum of law in support appear as "Pls. Mot. at __[page]" and "Pls. Mem. at __[page]," respectively. Declarations cited herein appears as "__[last name] Decl. ¶ __[paragraph]" and are contained in either Plaintiffs' prior submission (docket no. 37) or Defendant's Appendix of Materials in Opposition to Plaintiffs' Motion for Conditional Class Certification, filed herewith.

[2] This group is collectively referred to herein as "putative class members." Plaintiffs also state in their brief that they seek to include "senior case managers" although this category of nurses is not identified in either their Complaint or motion. Pls. Mem. at 3.

Declarations submitted by WellPoint establish that many of the nurses who fall within Plaintiffs' crudely-defined putative class are paid hourly and are overtime eligible. The disparities in the manner in which nurses are paid do not end there. Some salaried nurses have been compensated with additional pay incentives, while others have not been. Ginzinger Decl. ¶ 11.

Third, the nationwide class Plaintiffs seek to bundle together is comprised of nurses who are employed in different positions throughout WellPoint's numerous business units and facilities across the country. Even those who hold the same job title perform vastly different duties. Despite Plaintiffs' arguments to the contrary, courts have found it necessary to conduct an individualized assessment of employees' duties to determine exempt status under the Fair Labor Standards Act ("FLSA"). This individualized inquiry makes conditional certification wholly inappropriate in misclassification cases except where there is a national policy or practice to misclassify clearly non-exempt employees.[3] Here, Plaintiffs have failed to demonstrate that WellPoint has actually implemented a policy or practice that violates the FLSA and that impacts a collective of similarly-situated individuals. Finally, the employees in these positions are all registered nurses ("RNs") – a position universally viewed as exempt.

## PROCEDURAL HISTORY

A.   ***Johnson v. WellPoint*: Federal District Court Denies Conditional Certification In a Similar Case Involving The Same Jobs At Issue Here**

On October 11, 2006, two former WellPoint employees filed a putative FLSA collective action in the federal district court for the Northern District of Georgia, styled *Johnson v. WellPoint*.[4] The plaintiffs in *Johnson* – a former WellPoint nurse case manager and medical

---

[3] The decision to classify all janitors as exempt, for example, would justify conditional certification. *See Holt v. Rite Aid Corp*., 333 F. Supp. 2d 1265, 1271 (M.D. Ala. 2004).

[4] Nichols Kaster & Anderson, PLLP has filed an appearance in the *Johnson* case.

2

management nurse – sought conditional certification for a nationwide collective action on behalf

of all nurses employed by WellPoint who perform the job duties of "nurse case managers and/or

medical management nurses" – two of the three positions Plaintiffs identify in this case.  Order at

2.  The *Johnson* court denied plaintiffs' motion explaining that "where plaintiffs seek to send

court-approved notice to potential plaintiffs at the first-tier conditional certification stage, courts

should treat those requests with a higher level of scrutiny."  *Id*. at 12-13.  The court reasoned:

> We can think of no good reason for apparent judicial sponsorship of the notice, at
> a stage in the litigation when there had been no determination that the plaintiff's
> allegations have any merit, and we can think of a good reason against it, which is
> that the judicial imprimatur is likely to be misunderstood as a representation that
> the suit probably has merit. . .

*Id*. at 6 (quoting *Haynes v. Singer Co.*, 696 F.2d 884, 886 n. 2 (11th Cir. 1983); *Woods v. New*

*York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982)).  Similar to the evidence Plaintiffs submit

to this Court, the *Johnson* plaintiffs submitted "nearly identical declarations averring that all

those who held Nurse Case Manager or Medical Management Nurse positions with Defendant

[WellPoint] are similarly situated."  Order at 7.[5]  The *Johnson* court found the evidence woefully

insufficient to support conditional certification.  *Id*. at 11.

**B.     Plaintiffs' Seek A Different Result In This Case**

Unsatisfied with the ruling in *Johnson*, Plaintiffs are seeking a different outcome from

this Court.  Plaintiffs claim that WellPoint failed to pay them and other allegedly similar

individuals overtime in compliance with the FLSA.  As in *Johnson*, Plaintiffs purport to bring

these claims as a collective action on behalf of themselves and all other utilization review, case

---

[5] Plaintiffs described the positions' essential job functions as collecting medical data from the member's file; inputting the collected data into a computer program; putting the matter through "acuity" screening; and informing the member of the computer's decision.  They also claimed that WellPoint developed and utilizes national standards for the case manager and medical management nurses positions across all of its subsidiaries and averred that they were paid a salary to perform these duties.  Order at 9, 10.

management and medical management nurses across WellPoint's organization, all of whom are RNs.  Plaintiffs attribute identical duties to each of these three positions.  Just as in *Johnson*, Plaintiffs sole support for this proposition is through unsubstantiated bare-bones declarations which are inaccurate and simply insufficient to support conditional certification.[6]

### STATEMENT OF FACTS

Critical factual disparities exist among the putative class members making them unsuitable for collective treatment.  Significant differences include:

- The putative class members are paid differently -- some are salaried and do not receive overtime, while others are paid hourly and are overtime eligible;

- The putative class members have different titles and perform different duties based, in part, on geography, business unit, manager and time period in which they were employed;

- WellPoint has a complex business and operating structure that creates significant variance in the job duties even within the same positions; and

- The nature, title and responsibilities of the positions at issue have changed significantly over time as a result of WellPoint's mergers and acquisitions.

### A.     WellPoint's Complex Business And Operating Structure

WellPoint's organization and history are complex and this complexity creates tremendous challenges to class litigation.  Headquartered in Indianapolis, Indiana, WellPoint is the nation's leading health benefits company serving the needs of approximately 34 million medical members nationwide and is located in 14 states:  California, Colorado, Connecticut, Georgia, Indiana, Kentucky, Maine, Missouri, Nevada, New Hampshire, New York, Ohio, Virginia and Wisconsin.  Ginzinger Decl. ¶ 2.  WellPoint's operations within each state are fragmented with

---

[6] The fact that the parties have yet to engage in any discovery or exchange initial disclosures makes conditional certification even more inappropriate at this stage.  Had Plaintiffs held off in seeking conditional certification until after exchanging initial disclosures and conducting a preliminary round of discovery, it would have been clear that conditional certification is highly implausible and premature.

respect to where employees work (whether in large buildings with numerous offices, in small office complexes, or, in many cases, in their homes) and, within each state, WellPoint's legacy organizations, from which putative class nurses originated, are equally complex.  The complex structure of WellPoint's organization, created through various mergers and acquisitions, has resulted in significant differences among putative class members nationwide in terms of the duties they perform and their compensation structure both within and across job categories.[7]

### B.    Significant Differences Among Putative Class Members

Plaintiffs seek to certify an overly broad and imprecisely defined class of employees.[8] WellPoint submits herewith declarations of more than 50 putative class members that Plaintiffs

---

[7]  WellPoint, Inc. was formed when WellPoint Health Networks Inc. and Anthem, Inc. merged in November 2004 to become the nation's leading health benefits company.  Ginzinger Decl. ¶ 3. Anthem was the outgrowth of two Indianapolis-based corporations commonly known as Blue Cross of Indiana and Blue Shield of Indiana.  *Id.*  Those two companies merged to form Blue Cross and Blue Shield of Indiana.  *Id.*  WellPoint Health Networks Inc.'s predecessor was Blue Cross of California.  *Id.*  WellPoint was formed in 1992 to operate Blue Cross of California's managed care business.  *Id.*  In 1993, Blue Cross of California spun off its managed care business into a separate publicly traded entity, WellPoint Health Networks Inc.  *Id.*  In addition, there were several sub-mergers and acquisitions that create the backdrop to what is now WellPoint, Inc.  *Id.* at 4.  Prior to merging with WellPoint Health Networks Inc., Anthem merged or acquired various Blue Cross and Blue Shield plans including those in Kentucky, Ohio, Connecticut, New Hampshire, Maine and Virginia.  *Id.*  Likewise, prior to 2004, WellPoint Health Networks acquired a portion of the Group Benefit Operations of the John Hancock Mutual Life Insurance Company and Costs Care Inc., Rush Prudential Health Plans of Illinois, PrecisionRx, Cerulean Companies, Inc., RightCHOICE, MethodistCare, Golden West Dental and Vision and Colbalt Corp.  *Id.*  After the merger of Anthem, Inc. and WellPoint Health Networks Inc. in 2004, the newly formed WellPoint, Inc. acquired Lumenos, WellChoice, Inc., American Imaging Management, Resolution Health, Inc. and DeCare Dental.  *Id.*  These legacy entities employed RNs in differently titled positions who performed a wide array of duties based on the entity that employed them.  *Id.*

[8] The burden rests with Plaintiffs to demonstrate that the employees in this putative class are similarly situated to each other and the named plaintiffs.  *See, e.g., Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 496 (D.N.J. 2000); *Reed v. Mobile County Sch. Sys.*, 246 F. Supp. 2d 1227, 1232 (S.D. Ala. 2003).

arguably seek to include in the proposed class.[9]  Most importantly, the declarations conclusively demonstrate that WellPoint does not categorically classify all of its nurses alike and the wide range of duties that nurses perform depends on their jobs, locations, whether they work from home or in an office, and the types of clients and members they serve.[10]

> **1.      Despite Their Status As RNs, WellPoint Does Not Pay All Utilization Review, Medical Management Or Case Management Nurses As Salaried Exempt Employees, But Rather Pays Many Of Them Hourly And Compensates Them For Overtime As The FLSA Permits**

Plaintiffs' fundamental argument to support conditional certification is that the three broad categories of nurses it seeks to certify are all paid on a salary basis pursuant to a policy or practice implemented in violation of the FLSA.  Pls. Mem. at 6.  Plaintiffs are mistaken. WellPoint pays some of the nurses that fit into the three job families on a salary basis, some on a salary plus incentive payment basis, and some on an hourly basis with overtime for hours worked over forty in a workweek.  Ginzinger Decl. ¶ 11.[11]  This flaw warrants denial of their motion.

---

[9] Declarations of putative class members are contained in Defendant's Appendix filed herewith at Exhibits 28-83.  Declarants work at one of the WellPoint companies located in Albany, New York; Andover, Massachusetts; Atlanta or Buckhead, Georgia; Chicago, Illinois; Cincinnati or Mason, Ohio; Denver, Colorado; Indianapolis, Indiana; Louisville, Kentucky; Newbury Park or Woodland Hills, California; and St. Louis, Missouri.

[10]  WellPoint's nurses share one significant similarity – they exercise nurse's judgment on a daily basis, despite the abundant variety of duties they perform even within the same job title. Ginzinger Decl. ¶ 7; Nolan Decl. ¶¶ 9,11,13; Otoo Decl. ¶¶ 3, 6-8; Verteramo Decl. ¶ 9; Brill Decl. ¶¶ 19-24; Isaac Decl. ¶¶ 5-6; Clarke-Bell Decl. ¶¶ 19-20; Corsi Decl. ¶¶ 7-8; Ezekiel Decl. ¶¶ 3, 6; Provenza Decl. ¶ 6; Danei Decl. ¶ 7; Edwards-Fulwood Decl. ¶¶ 22-25.  They determine whether to pre-authorize or continue a course of complex, life-saving medical treatment for members.  Ginzinger Decl. ¶ 7; *see also* Wachendorf Decl. ¶ 3.  This requires them to exercise their nursing knowledge and judgment in determining the nature of the member's condition and whether the prescribed course of treatment falls within WellPoint's guidelines.  Ginzinger Decl. ¶ 7; Auer Decl. ¶¶ 5,6; Swanson Decl. ¶¶ 13, 14; Provenza Decl. ¶ 6; Edwards-Fulwood Decl. ¶¶ 13, 22.

[11] Hutt Decl. ¶¶ 3, 4 (paid hourly plus overtime); Clarno Decl. ¶¶ 4, 11-12 (same); Edwards-Fulwood Decl. ¶¶ 4, 6 (same); Swanson Decl. ¶ 4 (salary); Davey Decl. ¶ 15 (salary); Brock Decl. ¶¶ 8, 10 (salary plus incentive); Sandra Jones Decl. ¶ 19 (salary plus performance bonus).

### 2.     Variations In Job Duties

The broad categories of nurses Plaintiffs seek to certify as a class, which they allege perform similar duties, are actually dissimilar. Not all of the categories identified by Plaintiff work in a call center and, thus, based on this fact alone are not similarly situated. Contrary to Plaintiffs' claims, all nurses in the putative class *do not* perform the same relevant duties.

### a.     Utilization Review And Medical Management Nurses

Generally speaking utilization review nurses work with health care providers to ensure appropriate and consistent administration of plan benefits. They perform this function in a myriad of different ways by collecting clinical information required to assess medical necessity, out of network services, and appropriateness of treatment, setting and applying appropriate medical policies, clinical guidelines, plan benefits, and/or scripted algorithms within the scope of their licensure. Bayens Decl. ¶¶ 3, 4, 5; Auer Decl. ¶ 3. Some of these RNs may conduct pre-certification and concurrent reviews, while others do not. Some conduct discharge planning, while others do not. Cammalleri Decl. ¶ 1 (concurrent review); Person Decl. ¶¶ 1, 3 (same); Sherry Armstrong Decl. ¶ 3 (helps with discharge planning). Others conduct retrospective, out of network and appropriateness of treatment reviews within the scope of their licensure by using appropriate medical policies and clinical guidelines in compliance with department guidelines and consistent with the members' eligibility, benefits and contract. Person Decl. ¶¶ 3, 4, 6, 7. They develop individualized relationships with physicians and healthcare service providers to help improve health outcomes for members. Bayens Decl. ¶ 3. They are also responsible for educating members about plan benefits, an aspect of the job that varies by employee. Within the

utilization review nurse category are a group of subcategories including utilization review I and II nurses, which perform different duties.  *Id*. at ¶ 2; Wachendorf Decl. ¶ 1.[12]

Some utilization review nurses receive claims to review randomly through a queue, while others only receive claims to review that are specific to a certain hospital.  Auer Decl. ¶ 3 (receives claims through a random queue); Brock Decl. ¶ 2 (same); Flaherty Decl. ¶ 3 (receives claims specific to certain hospitals); Cammalleri Decl. ¶ 6 (same).

A medical management nurse is generally responsible for collaborating with healthcare providers and members to promote quality member outcomes, to optimize member benefits and to promote effective use of resources.  Gerts Decl. ¶ 2.  Although the specifics of their individual duties vary, they generally ensure medically appropriate, high quality and cost effective care through assessing the medical appropriateness of treatment setting by using the applicable medical policy and industry standards, accurately interpreting benefits and managed care products and steering members to appropriate providers, programs or community resources. Duties that require an RN license may include conducting pre-certifications, concurrent, retrospective, out of network and appropriateness of treatment setting reviews to ensure compliance with applicable criteria, medical policy, and member eligibility, benefits and contracts.  Medical management nurses interact primarily with hospital staff rather than members.  Gerts Decl. ¶ 3.

---

[12] Flaherty Decl. ¶¶ 3-5 (determines whether hospital stay is medically appropriate based on review of patient records); Ellington Decl. ¶¶ 5-8, 10 (performs secondary review of complex medical issues; drafts and implements operational and clinical guidelines; trains new employees; develops job aids; participates in employment decisions including hiring, firing, evaluations and discipline); Fairchild Decl. ¶¶ 2, 3, 7, 9, 10 (directs nurses; determines when suggested guidelines do not fit particular member's needs; refers cases to case management); Bayens Decl. ¶¶ 3-6 (guidelines do not address all conditions, *e.g.*, new born patients in the NICU; translates medical jargon so members can understand).

b.      **Case Management Nurse**

Unlike a utilization review or medical management nurse, case management nurses are not primarily involved in the approval or denial of medical procedures, treatments or benefits. Rather, they ensure that all of the medical needs of members with severe injuries and severe or chronic illnesses are met.  Although their job duties vary, they often conduct an assessment to identify individual needs that will serve as the basis for a comprehensive case management plan. Possel Decl. ¶¶ 2, 3; Edwards-Fulwood Decl. ¶¶ 13-15.  Case managers generally follow individual members from the opening of their case (prior authorization) until discharge and recovery, so they are able to cover the entire continuum of care for a member; however, this varies as well.  Labounty Decl. ¶¶ 8-10; Forte Decl. ¶¶ 5-8; Winship Decl. ¶ 2; McGee-Horton Decl. ¶ 3; Lynn Jones Decl. ¶ 4; Edwards-Fulwood Decl. ¶¶ 13-15.  Some case management nurses prepare a case management plan specifically tailored to meet the objectives as identified during the assessment of the member and implement the appropriate care plan.  Possel Decl. ¶¶ 2, 3; Zager Decl. ¶¶ 4, 6.  Some link members and providers to other resources.  Possel Decl. ¶ 2. Within this job classification, there are a number of subcategories each with different job duties and responsibilities including senior nurse case manager, specialty nurse case manager, disease management nurse and lead nurse case manager.[13]  Case managers also specialize in certain

---

[13] Possel Decl. ¶¶ 1, 2 (helps members understand their benefits and coordinates their care); Sandra Armstrong Decl. ¶  2, 6 (specialty nurse case manager teaches members how to prepare for surgery); Alcaraz Decl. ¶ 2 (lead nurse case manager oversees other nurses); Ricker Decl. ¶¶ 1, 8 (lead case management nurse has additional supervisory type duties); Winship Decl. ¶¶ 1, 2, 6 (senior case management serve members who have undergone serious trauma); Carter Decl. ¶¶ 7-9, 13 (case manager educates members); Sandra Jones Decl. ¶¶ 12, 16 (resolves medical problems encountered by members); Ralph Decl. ¶¶ 5, 6, 10, 12 (decides best course of action for members to receive benefits); Woods Decl. ¶¶ 7, 13 (case manager in the transplant department; reviews cases to make sure other RNs are properly interpreting and applying medical policies); McGee-Horton Decl. ¶¶ 3, 4, 15, 19, 20 (interprets clinical information from facilities to determine whether transplant meets relevant policy); Lynn Jones Decl. ¶¶ 4-7, 10, 11, 15, 20-23 (reviews medical records and approves procedures).

9

fields.[14]  Disease management nurses are another subset of the case management nurse classification.  The services they provide are significantly different from those provided by other case management nurses.  They are health educators and advocates for members who suffer from diabetes, asthma, chronic obstructive pulmonary disease, congestive heart failure, and coronary artery disease.  Smith Decl. ¶ 1; Pierce Decl. ¶¶ 1, 2, 7, 9.  These nurses assist members in identifying and achieving healthy lifestyle goals, so that future costs and health risks can be reduced for these high-risk members.  Smith Decl. ¶¶ 1, 10; Pierce Decl. ¶¶ 2, 4, 5; Edwards-Fulwood Decl. ¶ 10.

In some states served by a WellPoint company, case management nurses are required to have a case management certification, which supplements their RN license.  Ginzinger Decl. ¶ 6; Labounty Decl. ¶ 2; Forte Decl. ¶¶ 1, 4; Woods Decl. ¶¶ 1, 12.  In other states, WellPoint only recommends that they obtain certification.  Ginzinger Decl. ¶ 6.

### c. Vast Differences In Job Duties Exist Among Individuals Whom Plaintiffs Would Claim To Represent

The differences among the three wildly broad categories of nurses (and the catchall "other similar positions") is further illustrated by reviewing the disparities among nurses sitting side-by-side with and who report to the same managers as the Plaintiffs and opt-ins who have joined this lawsuit.  The Plaintiffs' 10 declarations describe cookie-cutter jobs; yet the declarations submitted herewith by nurses who work side-by-side with Plaintiffs and opt-ins show, for example, that not all nurses necessarily work in a "call center environment," which

---

[14] Labounty Decl. ¶¶ 1, 8-10 (specializes in transplant case management); Woods Decl. ¶ 1 (same); Kelly-Roelofs Decl. ¶ 1 (discharge planning); Lirette Decl. ¶ 1 (bariatrics); Sandra Armstrong Decl. ¶ 2 (same); Adelman Decl. ¶ 3 (member service assistance); Clarno Decl. ¶ 1 (advanced care); Hutt Decl. ¶ 2 (same); Lee Decl. ¶ 1 (triage); Zager Decl. ¶ 1 (high risk neonatal and obstetrics); Pierce Decl. ¶ 4 (five "core diseases"); Edwards-Fulwood Decl. ¶ 9 (disease management).

Plaintiffs fail to acknowledge or define in their brief.  Tellingly, not all putative class members are required to handle telephone calls throughout the day.

Most utilization review nurses, for example, do not spend much, if any, time on the telephone despite Plaintiffs inaccurate characterization that the entire putative class work in a "call center" environment.  Krebs Decl. ¶ 7 (does not make or receive calls); Auer Decl. ¶ 9 (same); Flaherty ¶ 5 (less than 5 percent of time on telephone); Bayens Decl. ¶ 7 (most correspondence by letter or facsimile, not phone).  Putative class members have the freedom to schedule their own appointments and use the telephone with varying frequency, if at all.[15]  The nurses also have different points of contact.  Some RNs interact directly with members; some only with hospitals or providers; and others have no member or provider contact.[16]  The differences do not end there.  In some states, nurses *are required* to participate in continuing education programs to maintain their license and case managers must also participate in a separate program to maintain their certification.  Ginzinger Decl. ¶ 6.

In other states, WellPoint *recommends* that nurses participate in continuing education programs.  *Id*.  In all states, RNs are required to have a working knowledge of medical terminology, clinical norms within the scope of their practice, and comply with applicable state nursing regulations.  *Id*.

---

[15] Labounty Decl. ¶¶ 7, 13 (not on a telephone queue); Winship Decl. ¶¶ 4, 5, 13 (same); Brock Decl. ¶ 2 (does not make or receive calls); Wachendorf Decl. ¶ 2 (same); Alcaraz Decl. ¶ 16 (not tied to telephone); Flaherty Decl. ¶ 5 (spends less than 5 percent of her time on the telephone); Ellington Decl. ¶ 12 (occasionally calls members); Smith Decl. ¶¶ 1, 2 (members call by appointment); Cline Decl. ¶ 15 (same); Ezekiel Decl. ¶ 7 (calls members, but rarely receives calls).

[16] Ralph Decl. ¶ 3 (contacts members directly); Fairchild Decl. ¶ 2 (contacts nurses at hospitals; occasionally calls members); Bayens Decl. ¶ 7 (primarily talks with physicians or hospitals or equipment provider; rarely talks directly with members); Woods Decl. ¶ 6 (rarely has direct contact with members or facilities); Corsi Decl. ¶ 3 (contacts providers and hospital nurses).

11

## C.    Registered Nurses Are Exempt Employees

The putative class members here all require RN licensure.[17]  Licensed RNs who are paid on a salary basis are considered exempt "learned professionals."  29 C.F.R. § 541.301(a) and (e)(2); 29 C.F.R. § 541.300.[18]  RNs also may qualify for the administrative exemption.

While some putative class members may use various guidelines as references in their decision making process, these guidelines do not supplant the necessity for the nurses to exercise their own discretion and nursing judgment constantly as they perform their jobs.  Use of these guidelines does not minimize the exempt nature of putative class members' duties.  In fact, not all putative class members use the same guidelines.  Some of the putative class members use Milliman Care Guidelines® for use in clinical review; customized guidelines; or Behavioral Health UM Guidelines.  Ginzinger Decl. ¶¶ 7-10.  These guidelines are no substitute for the nursing judgment and discretion required to perform the jobs (and often to interpret the guidelines themselves).  Instead, nurses often use the guidelines as a starting point, but not as a rule book.[19]  In the absence of a medical policy or clinical guideline that directly applies to a

---

[17] An RN is a health care professional responsible for ensuring the care and recovery of sick individuals and maintaining the health for healthy individuals using appropriate nursing practices.  Ginzinger Decl. ¶ 6.  RNs have received a bachelor's degree, associate degree, or a diploma from an approved nursing program.  *Id.*; *see also* Forte Decl. ¶ 1; Swanson Decl. ¶ 1.  Individuals must complete an examination to obtain a nursing license.  Ginzinger Decl. ¶ 6.

[18]  The U.S. Department of Labor classifies RNs as exempt employees.  *See* WH Admin. Op. Ltr., 2005 DOLWH LEXIS 15, at *4 (Mar. 17, 2005); WH Admin. Op. Ltr., 1999 DOLWH LEXIS 127, at *4 (Dec. 29, 1999).  While WellPoint's nurses do not engage in direct patient care in a medical setting, their work still requires an RN license and, thus, meet the exemption requirements under the FLSA.  *See, e.g., Williams v. Thomson Corp.*, No. CIV00-2256, 2003 WL 1571559, at *12 (D. Minn. March 21, 2003) (attorney considered exempt even though she did not practice law or provide advice to or represent clients).

[19] Winship Decl. ¶ 9; Ricker Decl. ¶ 6; Cooper Decl. ¶ 10 ("Mechanical adherence to a list of questions won't serve much purpose, but might actually backfire by causing the member to feel that I am disengaged."); Lirette Decl. ¶ 5; Banks Decl. ¶¶ 7-9 (Milliman does not cover every diagnosis); Sherry Armstrong Decl. ¶ 4; Person Decl. ¶ 6 (Milliman is "not sensitive to issues

given situation, nurses use their discretion and professional judgment in making decisions based on the clinical circumstances of the member.  Ginzinger Decl. ¶ 10.  Moreover, putative class members use different guidelines in different ways or not at all.[20]

### D.      Named Plaintiffs, Declarants and Other Opt-In Plaintiffs

Even though 18 individuals in addition to the three Named Plaintiffs had filed consent forms to join this case at the time Plaintiffs' filed their motion, notably Plaintiffs secured declarations *from only 10 of those individuals* (*i.e.*, 3 from the Named Plaintiffs and 7 from opt-in plaintiffs).  Plaintiffs secured declarations from one RN that held the "senior case manager" title; four from utilization review nurses; four from case management nurses and one from a medical management nurse.  The declarants are located in seven different states with four from Georgia and one each from California, Indiana, Illinois, Ohio, Massachusetts and New York. None of the declarants address work conditions at locations other than their own.  *Only two of the declarants are current employees* (*i.e.*, Maxine Adelson and Georgia Woodruff).[21]

---

like time of year, social influences, elective surgeries, etc."); Robinson Decl. ¶ 10 (nurses she trains do not follow guidelines rigidly); Corsi Decl. ¶ 7 (applying the guidelines requires nursing knowledge).

[20] Smith Decl. ¶ 4 (does not use Milliman guidelines); Roper Decl. ¶ 4; Brock Decl. ¶ 3 (same); Cooper Decl. ¶ 11 (same); Auer Decl. ¶ 3 (uses FACETS); Davey Decl. ¶ 12 (uses MAS and WMDS); Stobaugh Decl. ¶ 13 (uses Health Wise, rarely uses Milliman); Billows Decl. ¶ 10 (uses FACETS and ULTERRA); Woods Decl. ¶ 10 (uses Share Point, TriMed and WMDS); Etuwewe Decl. ¶ 8 (uses Call Care and Milliman, although not rigidly); Robinson Decl. ¶ 10 (does not follow guidelines rigidly); Winship Decl. ¶ 9 (uses Milliman); Clarno Decl. ¶ 17 (uses Health Wise).

[21] To date, 21 nurses have filed consent forms.  Of the other opt-in plaintiffs that did not complete declarations, four nurses hold the position of nurse medical management I; two nurses hold the position of senior HMC nurse case managers or case managers II; and the remaining nurses hold the position of LVN/LPN utilization review I, specialty nurse case manager, nurse case manager I or senior appeal nurse.  These 11 other opt-in plaintiffs are located in eight different states with two from California, Ohio, Georgia, Missouri and one from Wisconsin, Ohio, New York and Indiana.  At least four of the 11 opt-in plaintiffs are current employees (*i.e.*, Patsy Ann Foister, Sheliah Howard and Debra Liggins).  Opt-in plaintiffs Bonita Alkire and

**ARGUMENT**

**A.      Collective Actions Under The FLSA**

It is black letter law that this Court has no obligation to protect non-present class

members and plaintiffs' premature motion constitutes a clear abuse of the class action process.

The Court should not be swayed to issue a hasty decision given Plaintiffs' unfounded claim that

the statute of limitations continues to run on absent, non-party plaintiffs.  Pls. Mem. at 21; *see,*

*e.g., Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 180 (1989) (Scalia, dissenting)

(discovery order with respect to absent class members not authorized); *see also Frank v. Capital*

*Cities Commc'ns, Inc*., No. 80 Civ. 2188-CSH, 1983 U.S. Dist. LEXIS 12947, at *7 n.1

(S.D.N.Y. Oct. 7, 1983) (court need not protect absent class members in opt-in action).  The

Court needs to balance the urge to issue premature notice to plaintiffs against the potential abuse

inherent in conditionally certifying a collective action.  *See Hoffmann-La Roche*, 493 U.S. at 171

("[c]lass actions serve important goals but also present opportunities for abuse"); *see, e.g.,*

*Armstrong v. Weichert Realtors*, No. 05-cv-3120, 2006 U.S. Dist. LEXIS 54230, at *7 (D.N.J.

Aug. 4, 2006) (loan officers could bring their own individual claims; certifying class constitutes

"abuse of the class action theory").  Nevertheless, here abusive notice has already occurred.[22]  It

is clear that this is not a case appropriate for certification or class notice.

---

Sheliah Howard (Assad Decl. ¶ 3; docket nos. 25, 48) are classified as non-exempt employees
eligible for overtime.

[22]  Courts have discretion, in appropriate cases to supervise notice, *Hoffman-La Roche,* 493 U.S.
at 169, and New York courts have played a role in deciding when to exercise their discretion
requiring similarity between the named plaintiffs and putative class members.  *See, e.g*., *Seever*
*v. Carrols Corp.*, 528 F. Supp. 2d 159, 174 (W.D.N.Y. 2007) (denying conditional certification);
*Flores v. Osaka Health Spa, Inc.*, No. 05 Civ. 962, 2006 U.S. Dist. LEXIS 11378, at *7
(S.D.N.Y. Mar. 16, 2006) (same); *Diaz v. Elecs. Boutique of Am., Inc.*, No. 04-CV-0840, 2005
U.S. Dist. LEXIS 30382, at *14-*17 (W.D.N.Y. Oct. 13, 2005) (same); *Levinson v. Primedia,*
*Inc.*, No. 02 Civ. 2222, 2003 U.S. Dist. LEXIS 20010, at *5-*6 (S.D.N.Y. Nov. 6, 2003) (same).

**B.     Plaintiffs Fail To Satisfy The Standard For Conditional Class Certification**

A collective action under § 16(b) of the FLSA may not be conditionally certified and

notice may not be authorized unless plaintiffs both provide admissible proof of an unlawful

policy and establish that there are similarly situated individuals who wish to join the action.[23]

Courts have used a "two-tiered' approach to determining whether named plaintiffs and putative

class members are similarly situated."  *O'Donnell v. Robert Half Int'l, Inc.*, 429 F. Supp. 2d 246,

249 (D. Mass. 2006).  At the initial "notice stage," Courts "[rely] upon the pleadings and any

affidavits to determine, under a 'fairly lenient standard,' whether the putative class members

'were subject to a single decision, policy, or plan that violated the law.'"  *Id.*  A plaintiff can

meet this standard "by making a modest factual showing or asserting substantial allegations that

the putative class members were together the victims of a single decision, policy, or plan that

violated the law."  *Trevzant v. Fid. Employer Servs. Corp.*, 434 F. Supp. 2d 40, 43 (D. Mass.

2006).  Neither is present here.  Plaintiffs have offered no viable evidence of a common policy

that violated the law and the small number of declarations, all based on inadmissible speculation,

do not make a factual showing sufficient to justify the Court to apply a more lenient standard or

to grant conditional certification.  Plaintiffs' lack of evidence coupled with the compelling and

thorough evidence (including more than 50 declarations) submitted by WellPoint that illustrate

Plaintiffs' ill-defined class are not similarly-situated provides support for this Court to apply a

more heightened level of scrutiny, under which conditional certification necessarily collapses.

---

[23] *Barfield v. New York City Health & Hosp. Corp.*, No. 05 Civ. 6319, 2005 WL 3098730, at *1
(S.D.N.Y. Nov. 18, 2005); *Morisky*, 111 F. Supp. 2d at 496; *Reed*, 246 F. Supp. 2d at 1232.

### 1. Plaintiffs Have Failed To Establish The Existence Of A Common Policy, Practice Or Scheme That Violates The FLSA

Plaintiffs have failed to establish a common policy, practice or scheme that violates the FLSA. *See Barfield*, 2005 WL 3098730, at *1 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *see also Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (mere allegations of widespread FLSA violation are insufficient to justify collective action treatment); *Hall v. Burk*, No. 3:01-CV-2487-H, 2002 U.S. Dist. LEXIS 4163, at *8 (N.D. Tex. Mar. 11, 2002) (same). Alone, this should foreclose collective treatment.

Plaintiffs have failed to make the requisite showing of a "single decision, policy or plan" to justify conditional certification of a collective action. Plaintiffs' declarations in support of their motion, which are replete with anecdotes, conclusory allegations, speculation and hearsay, fail to demonstrate a single decision, common policy or plan to which members of the putative collective action were subjected.[24] An analysis of the Plaintiffs' allegations and the 10 self-serving declarations leads inexorably to the conclusion that they failed to satisfy even their lenient burden. They assert in generalized and identical terms that "Defendant has operated under a scheme to deprive these employees of overtime compensation by failing to properly compensate them for all hours worked." Compl. ¶ 16. As set forth above, and supported by a number of undisputable declarations, a number of putative class members are paid hourly and eligible for overtime. Thus, contrary to Plaintiffs' claims, WellPoint does *not* classify all of its RNs as "exempt" employees. Pls. Mem. at 2; Compl. ¶¶ 14, 18. Given that WellPoint's alleged uniform pay practices is the only "common policy" articulated by Plaintiffs, the foundation of Plaintiffs' support for conditional certification fails.

---

[24] *See* WellPoint's Objections to Plaintiffs' Declarations filed herewith.

Furthermore, Plaintiffs fail to show that they have any firsthand (or indeed any) knowledge of WellPoint's operations as a whole, and therefore they are not competent to testify as to what happens at all WellPoint locations.[25]  While Plaintiffs may attest to their own individualized employment experiences, their mere belief that an unlawful policy exists, without any admissible evidence to support such a belief, is insufficient to justify collective action treatment.[26]  Virtually indistinguishable "bare bones" conclusory evidence was rejected in the *Johnson* case and there is no reason it should not be rejected here.  Plaintiffs' motion should fail.

### 2.    Plaintiffs' Motion Fails To Establish That They Are "Similarly Situated" To Other Members Of The Putative Class

Plaintiffs also cannot show that they are similarly situated to members of the putative class to warrant conditional certification.  *See, e.g., Morisky*, 111 F. Supp. 2d at 496 (burden rests with plaintiff).  "A class may be conditionally certified and notified of the pendency of an action only if the putative class members are 'similarly situated' with the named plaintiffs."  *O'Donnell v. Robert Half Int'l, Inc.*, 534 F. Supp. 2d 173, 177 (D. Mass. 2008); 29 U.S.C. § 216(b).  Plaintiffs have failed to proffer admissible evidence substantiating their allegation that they are similarly situated to other putative class members or to each other (notably even the three named Plaintiffs have different job titles), and therefore have not established that the Court should

---

[25] *See* paragraph 7 of declarations submitted by Plaintiffs Adelson, Boone, Heinrich, Foster-McFarland, Monroe, Ruggles, Sneed, Swann, Winn and Woodruff.

[26] *Diaz*, 2005 U.S. Dist. LEXIS 30382, at *14-*17 (allegations of one assistant manager's overtime practices insufficient to suggest that all were subject to same unlawful policy); *Freeman*, 256 F. Supp. 2d at 945; *Barfield*, 2005 WL 3098730, at *1 (anecdotal hearsay cannot establish unlawful policy); *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435-36 (E.D. Va. 2002) (same); *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (no evidence of a national policy that would support a collective action).

conditionally certify their claims.[27]  The Complaint and Plaintiffs' declarations do not sustain

this burden and bare allegations of "potentially" or "possibly" similarly situated individuals are

not enough.  Compl. ¶ 18.

Self-serving testimony containing conclusory allegations, hearsay, and plaintiffs'

personal beliefs that their duties are akin to those of other putative class members do not

establish similarity.[28]  Plaintiffs rely on nearly identical declarations to demonstrate that

Plaintiffs are "similarly situated."  Courts, however, have soundly rejected attempts by plaintiffs

to demonstrate they are similarly situated where, as here, they rely on identical declarations.[29]

The Court in *Johnson* similarly discredited declarations filed in support of plaintiffs' motion that

appeared nearly identical.  Order at 7.

Here, Plaintiffs claim that they are similarly situated because they share the same job

titles and perform the same general call-center duties.  Plaintiffs, however, gloss over significant

and material differences among members of the putative class they seek to represent and Courts

---

[27] *Levinson*, 2003 U.S. Dist. LEXIS 20010, at *4-*5 (insufficient showing of improper treatment); *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 519-20 (D. Md. 2000) (no similarly situated group); *Michaelson v. Arrow Transp. Co.*, No. Cv. 7-291-MA, 1997 U.S. Dist. LEXIS 23665, at *2-*3 (D. Or. June 6, 1997) (no affidavits regarding policy or practice); *see also Holt*, 333 F. Supp. 2d at 1270 (failed to show commonality).

[28] *Hall*, 2002 U.S. Dist. LEXIS 4163, at *3 (no similarly situated employees); *Bernard*, 231 F. Supp. 2d at 436; *see also Freeman*, 256 F. Supp. 2d at 945; *Nisenbaum v. Milwaukee County,* 333 F.3d 804, 810 (7th Cir. 2003) (complaint allegations not evidence); *Holt*, 333 F. Supp. 2d at 1272 (anecdotal evidence not enough); *Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1236 (M.D. Ala. 2003) (plaintiff's beliefs insufficient); *Freeman*, 256 F. Supp. 2d at 945 (unsupported assertions of widespread violations insufficient); *Hall*, 2002 U.S. Dist. LEXIS 4163, at *7; *Camper*, 200 F.R.D. at 519 (same).

[29] *Kessler v. Lifesafer Serv. Providers, LLC.*, No. 6:06-cv-1442, 2007 WL 1531395, at *2 (M.D. Fla. May 25, 2007) (unsupported allegations of violations and that other plaintiffs' exist insufficient where plaintiffs relied on identical declarations); *see also Planned Parenthood v. Doyle*, 162 F.3d 463, 468 (7th Cir. 1998) (discrediting identical affidavits); *In re: Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1060 (N.D. Cal. 2007) (identical declarations have "glaring reliability concerns").

have repeatedly denied conditional certification for this reason.  *See* Facts § B, *supra*; *see, e.g.,*

*Tyler v. Payless Shoe Source, Inc.*, No. 2:05-CV-33F(WO), 2005 WL 3133763, at *3 (M.D. Ala.

Nov. 23, 2005) (requiring showing of commonality beyond the mere facts of job duties and pay

provisions); *Freeman*, 256 F. Supp. 2d at 945 (examination of differences in duties warrants

denying conditional certification); *see also Heagney v. European Am. Bank*, 122 F.R.D. 125, 127

(E.D.N.Y. 1988) (certification is appropriate when some factual nexus exists that the named

plaintiffs and potential class members are victims of a particular alleged policy or practice).

As the declarations of potential plaintiffs filed herewith demonstrate, the individuals that

Plaintiffs seek to include in the same collective action lack commonality.  All nurses do not

perform the "same call center nurse duties and responsibilities" despite Plaintiffs attempt to

minimize the nursing duties performed by putative class members.  Pls. Mem. at 4.  For example,

the putative class members who work in the same location with the same job title perform vastly

different duties.  Davey Decl. ¶ 6 (health advocate nurse in Indianapolis advises other nurses on

how to advise members with cancer); Gilmore Decl. ¶¶ 7, 16 (health advocate nurse in

Indianapolis services employees of a large shipping company and educates on surgery

precautions); Alcaraz Decl. ¶¶ 8-10 (case manager lead in Woodland Hills audits nurses' cases,

reviews management reports and vendor reports); Etuwewe Decl. ¶¶ 3, 5 (case manager lead in

Woodland Hills evaluates cases for best plan of care and supervises 26 other nurses); Sandra

Armstrong Decl. ¶¶ 6, 7 (specialty nurse case manager in Woodland Hills teaches patients how

to prepare for surgery); Zager Decl. ¶ 4 (specialty nurse case manager in Woodland Hills works

with pregnant women or parents of an infant).

As noted above, WellPoint treats its nurses with the same job title as both exempt and

non-exempt employees for pay purposes (*i.e.*, some receive a salary and others are paid hourly

and receive overtime).  *See Davis v. Lenox Hill Hosp.*, No. 03-Civ.3746 DLC, 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004) (exempt and non-exempt RNs not similarly situated).

Another flaw in Plaintiffs' "proof" is that the proffered testimony regarding job duties is limited to the locations in which each declarant worked and is wholly inconsistent with management's performance expectations.  In contrast, WellPoint has offered considerable evidence by other putative class members as to the significant variation in their job duties and performance expectations, and such evidence belies Plaintiffs' conclusory assertions that all nurses are similarly situated to each other.  Plaintiffs have failed to meet their burden of showing that other nurses are similarly situated to them, even under the lenient standard.

### a.    Fact-Specific Inquiry Necessary To Determine The Exempt Status Of The RNs Militates Against Conditional Certification

Plaintiffs claim that the Court should disregard "job titles," Pls. Mem. at 11, in determining whether individuals are similarly situated.  If the Court were to disregard the use of job titles, however, as Plaintiffs urge, the Court would necessarily need to engage in a highly-individualized inquiry into the job duties performed by putative class member classified as exempt to determine whether they should be part of the class.

Determining whether potential Plaintiffs, classified as exempt, are similarly situated requires a fact-specific, highly-individualized inquiry into the plaintiffs' activities making collective treatment inappropriate.  Given the specific and individualized inquiries required, it is clear that the differences among class members would predominate over their similarities and require individual inquiry at trial.  The exempt status of any employee under the FLSA depends on whether the employee satisfies the relevant statutory exemption criteria.  *See* 29 C.F.R. § 541.2; *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003).  As noted above, RNs are exempt under the FLSA.  *See* Facts § C, *supra*.  Recognizing the difficulty

20

inherent in allowing exemption cases to proceed on a collective basis, numerous courts have refused to certify collective actions under similar circumstances.[30]  Here, as in *Tyler*, a number of the putative class members Plaintiffs seek to include in the collective action are currently paid as non-exempt employees.  Plaintiffs ignore the inescapable fact that the differences among nurses' individual circumstances clearly predominate over any similarities.  Their allegations simply cannot support a collective action, which in this case, is not superior to individual trials on potential claims.[31]

---

[30] *Tyler*, 2005 WL 3133763, at *5-*7 (fact-specific inquiry necessary to determine whether employees properly classified); *Morisky*, 111 F. Supp. 2d at 499 (same); *Aguirre v. SBC Commc'ns, Inc*., No. Civ.A.H-05-3198, 2006 WL 964554, at *5-*7 (S.D. Tex. Apr. 11, 2006) (citing cases); *Holt*, 333 F. Supp. 2d at 1271 (exemption required "fact-intensive determination" and examination of employees' day-to-day tasks); *Dean v. Priceline.com, Inc*., No. 3:00CV1273 (DJS), 2001 U.S. Dist. LEXIS 24982, at *7 (D. Conn. June 5, 2001) (same); *Donihoo v. Dallas Airmotive, Inc*., No. Civ.A.3:97-CV-0109-P, 1998 WL 91256, at *1 (N.D. Tex. Feb. 23, 1998) ("[i]nquiry into the employee's specific job duties . . . is not appropriate in a class lawsuit."); *Diaz*, 2005 U.S. Dist. LEXIS 30382, at *13-*14 (determination of exempt status requires a detailed factual analysis of each plaintiff's daily activities); *Reich v. Homier Distrib. Co*., 362 F. Supp. 2d 1009, 1014 (N.D. Ind. 2005) ("[l]iability depended on an individual determination of each employee's duties."); *Young v. Cerner Corp*., 503 F. Supp. 2d 1226, 1233 (W.D. Mo. 2007) (denying conditional certification because of varied job responsibilities); *Forney v. TTX Co.*, No. Civ. A. 05-c-6257, 2006 WL 1030194, at *3 (N.D. Ill. Apr. 17, 2006) (individualized inquiry into classification warranted denial of conditional certification) (citing cases); *Saxton v. Title Max of Ala., Inc*., 431 F. Supp. 2d 1185, 1189 (N.D. Ala. 2006) (denying conditional certification where individualized inquiry "runs directly counter to 'the economy of scale envisioned by' collective treatment of substantially similar employees").

[31] Plaintiffs cannot argue that after further discovery, they will be able to establish that other, similarly situated individuals exist.  Here, Plaintiffs filed their motion prior to conducting any discovery.  As the court in *Armstrong*, admonished, Plaintiffs cannot claim they need additional discovery to prove there exist similarly situated employees where they have moved prematurely for conditional class certification without having taken any discovery.  *See* 2006 U.S. Dist. LEXIS 54230, at *6-*7 (denying plaintiffs' motion for conditional certification filed less than one month after Defendant had answered the complaint and before the parties had conducted discovery).

C.   **Even If Conditional Certification Were Appropriate (Which It Is Not), The Scope Of The Class Would Have To Be Substantially Limited**

Plaintiffs admittedly have no evidence regarding nursing practices at locations other than their own.[32]  There is "no indication that the problems alleged through first-hand knowledge" in the declarant's own department exist anywhere else in the country.  *See Bernard*, 231 F. Supp. 2d at 436.  This limited, anecdotal evidence presented by Plaintiffs is grossly insufficient to justify conditional certification of a nationwide class.

Furthermore, the temporal scope of Plaintiffs' putative class is also unacceptably broad. Plaintiffs seek to include all similarly situated nurses nationwide within the last three years even though the statute of limitations is only two years.  *See* 29 U.S.C. § 255(a).  The limitations period is extended to three years only if the employer's violation was "willful," and it is the plaintiff's burden to show that an alleged violation of the FLSA was willful.  *See, e.g., Walton v. United Consumers Club*, 786 F.2d 303, 308 (7th Cir. 1986); *Terwilliger v. Home of Hope*, 21 F. Supp. 2d 1305, 1308 (N.D. Okla. 1998).  Here, Plaintiffs have not even alleged, much less provided any evidence, that WellPoint's purported violations of the FLSA were willful.  *See also* WellPoint's Motion to Dismiss (docket nos. 19, 39).  Thus, any conditionally certified class should be limited to the two-years preceding the Court's order granting conditional certification.

Given the inadequacy of Plaintiffs' evidence to satisfy their burden for obtaining conditional certification, the minimal declarations that Plaintiffs have provided and Plaintiffs' failure even to allege that WellPoint's purported violations were willful, the broadest permissible collective action that could be certified in this case should include nurses employed by WellPoint

---

[32]   *See p*aragraph 7 of declarations submitted by Adelson, Boone, Heinrich, Foster-McFarland, Monroe, Ruggles, Sneed, Swann, Winn and Woodruff.

at only 7 locations within the last two years and at those locations only in the job categories for which there is a declarant.[33]

### D.    Further Notice To Putative Class Members Is Inappropriate Because Plaintiffs' Counsel Has Already Sent Out Numerous Unauthorized Notices

#### 1.    Plaintiffs' Premature Notice To Putative Class Plaintiffs

Without this Court's permission, Plaintiffs have distributed notice, beginning months before filing their Complaint, by letters to current and former WellPoint employees and also by posting a notice on the Internet urging potential employees to join this lawsuit.  *See* WellPoint's Motion to Cease and Desist (docket no. 38).  Despite this widely-disseminated notice, thus far, only 21 individuals have joined this lawsuit and three of those have already withdrawn.  The mere possibility that there may be nurses who have not responded to these notices is not a basis to grant expedited notice:  it cannot be overstated that "[c]ertification of a collective action and notice to a potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit."  *Rodgers v. CVS Pharm., Inc.*, No. 8:05-CV770T-27, 2006 WL 752831, at *3 (M.D. Fla. Mar. 23, 2006); *White v. KCPAR, Inc.*, No. 6:05-cv-1317, 2006 WL 1722348, at *3 (M.D. Fla. June 20, 2006).  Such an approach would assume those facts which Plaintiffs are required to prove and improperly relieve them of their burden at this stage.  *See White*, 2006 WL 1722348, at *4 (plaintiff failed to show that other aggrieved individuals exist other than the two individuals filed consents to join).  Having successfully solicited a number of opt-in plaintiffs through their unauthorized, unilateral and widely disseminated notices (and unsuccessfully solicited many more), the Court need not and should not assist Plaintiffs in continuing to barrage

---

[33] *See, e.g., Bernard*, 231 F. Supp. 2d at 436 (rejecting a nationwide class and certifying only as to Virginia, where plaintiffs' only evidence related to Virginia offices); *Trezvant*, 434 F. Supp. 2d at 51 (rejecting a nationwide class and certifying class only as to the one office for which the requisite evidence was submitted); *Threatt v. Residential CRF, Inc.*, No. 1:05-CV-117, 2005 U.S. Dist. LEXIS 16903, at *16-*18 (N.D. Ind. Aug. 12, 2005) (same).

putative class members with information regarding this lawsuit by allowing them to issue yet another round of notices.  Furthermore, the Court should order Plaintiffs to produce a list of the individuals to whom they have sent their unauthorized notice.  Plaintiffs' failure to attract more opt-in plaintiffs demonstrates a clear lack of interest in this lawsuit and, alternatively, that joinder would be more practicable.

**E.      Even If The Court Were To Conditionally Certify A Class, Plaintiffs' Proposed Notice Is Inappropriate**

Should the Court decide to conditionally certify any class in this matter and allow further notice, WellPoint respectfully requests that it allow the parties time to negotiate a stipulation regarding the form of notice to be issued and, if necessary, to present their respective arguments to the Court on that subject.  Plaintiffs' proposed notice is improper because it fails to mention that plaintiffs may be liable for costs in the event WellPoint prevails and it further fails to mention that putative plaintiffs may secure their own counsel rather than retaining Nichols Kaster & Anderson.[34]

In addition, if the Court were to authorize notice to putative class members, WellPoint notes that Plaintiffs' proposed notice scheme is inconsistent with the Court's power to supervise notice.  Given Plaintiffs' counsel's pattern of inappropriate and unauthorized contacts with members of the putative class, it is vital that the Court impose express limitations on, and closely supervise, further notice, if any, to members of the putative class regarding this litigation.  Ordering WellPoint to turn over contact information for putative class members to Plaintiffs' counsel, as requested in Plaintiffs' Motion, would simply invite further improper solicitations.

---

[34] The Court should disregard Plaintiffs' counsel's amended affidavit (docket no. 46) which seeks to include sample notices approved by other courts because Plaintiffs' amended affidavit was filed after the deadline for submitting their motion for conditional certification and Plaintiffs never requested nor obtained leave from this Court to file the amended affidavit.

Instead, WellPoint, if the Court authorizes notice, should be required to produce the contact information to a third party only.[35]

## CONCLUSION

For the foregoing reasons, WellPoint respectfully requests that the Court deny Plaintiffs' Motion for Conditional Certification.

Dated: June 13, 2008
       New York, New York

By: s/ Kenneth Sulzer
Kenneth Sulzer (ksulzer@seyfarth.com) (#515087)
Brett C. Bartlett (#4438149) (bbartlett@seyfarth.com)
James R. Cho (#514276) (jcho@seyfarth.com)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
212-218-5500
212-218-5526 (fax)
Attorneys for Defendant

---

[35] Numerous courts have permitted defendants to produce lists to third-party administrators, and not plaintiffs' counsel, for purposes of distributing notice to putative class members. *See, e.g., Wren v. RGIS Inventory Specialists*, No. C-06-5778, 2007 U.S. Dist. LEXIS 95439, at *30 (N.D. Cal. Dec. 19, 2007) (granting defendant's motion requesting that any information provided regarding potential class members should be produced only to a third-party administrator to protect the privacy of employees, and that Plaintiffs should be responsible for the cost of providing notice to potential class members); *Krzesniak v. Cendant Corp.*, No. C-05-05156, 2007 U.S. Dist. LEXIS 95145, at *10 (N.D. Cal. Dec. 17, 2007) (ordering a third-party administrator to distribute notices to potential plaintiffs ); *Prentice v. Fund for Pub. Interest Research, Inc.*, No. C-06-7776, 2007 U.S. Dist. LEXIS 71122, at *15 (N.D. Cal. Sept. 18, 2007) (agreeing that "using a third party is the best way to ensure the neutrality and integrity of the opt-in process").