**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

FAY RUGGLES, ANTOINETTE BOONE,
GEORGIA WOODRUFF, *on behalf of themselves*
*and all other similarly situated employees*,

                                          Plaintiffs,

                    - v -                                          Civ. No. 1:08-CV-201
                                                                           (LEK/RFT)

WELLPOINT, INC.

                                          Defendant.

**APPEARANCES:**                          **OF COUNSEL:**

OUTTEN & GOLDEN, LLP                      CARA E. GREENE, ESQ.
*Attorney for Plaintiffs*
3 Park Avenue, 29th Floor
New York, New York 10016

NICHOLS KASTER & ANDERSON, PLLP           DONALD H. NICHOLS, ESQ.
*Attorney for Plaintiffs*                 PAUL J. LUKAS, ESQ.
4600 IDS Center, 80 South 8th Street      RACHHANA T. SREY, ESQ.
Minneapolis, Minnesota 55402

SEYFARTH, SHAW LAW FIRM                   BRETT C. BARTLETT, ESQ.
*Attorney for Defendants*                 KENNETH D. SULZER, ESQ.
620 Eighth Avenue
New York, New York 10018-1405

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**MEMORANDUM-DECISION and ORDER**

On February 21, 2008, Plaintiffs filed this action alleging that WellPoint Inc. ("Wellpoint")

violated the Federal Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), as well as New York Labor

Law §§ 650 *et seq*., and New York State Department of Labor Regulations, by failing to pay

required overtime compensation. *See generally* Dkt. No. 1, Compl.  Plaintiffs seek to make this

action a collective action pursuant to FSLA and Plaintiff Ruggles seeks to make her New York State

claims a class action pursuant to FED. R. CIV. P. 23. Compl. at ¶¶ 2 & 3.

On May 5, 2008, Wellpoint filed a Motion to Dismiss, Dkt. No. 19, of which Plaintiffs opposed, Dkt. No. 33. Shortly thereafter, on May 23, 2008, Plaintiffs filed a Motion to Conditionally Certify a Class, pursuant to 29 U.S.C. § 216(b), in order to authorize the distribution of a nationwide notice to all of those employees and former employees of Wellpoint who may be similarly situated to the named Plaintiffs in this pending litigation and to provide potential plaintiffs an opportunity to opt into this action. Dkt. No. 37, Pls.' Mot. to Certify Class. Wellpoint filed concurrently a Motion for an Order to Plaintiffs for Cease and Desist in Unauthorized Communications to Putative Class Members. Dkt. No. 38, Def.'s Mot. to Cease and Desist. With regard to these two latter, concurrent Motions, the Court heard oral arguments on November 4, 2008.

## I. BACKGROUND

### A. The Parties

WellPoint, a complex corporate entity, was created through various mergers and acquisitions, making it one of the nation's leading health benefits companies serving approximately 34 million medical members nationwide. WellPoint has a corporate presence in fourteen (14) different states. Dkt. No. 53, Def.'s Mem. of Law at pp. 4-5, n.7.

Currently, we have three named Plaintiffs who were or currently are employed by WellPoint. Plaintiff Fay Ruggles resides in Hudson, New York, and was employed by WellPoint in Albany, New York, as a case management nurse from approximately November 2003 to August 2005. Compl. at ¶ 9. Plaintiff Antoinette Boone resides and was employed by Wellpoint as a utilization review nurse in Indianapolis, Indiana, from approximately August 2000 to May 2006. *Id*. at ¶ 10.

Plaintiff Georgia Woodruff resides and has been employed by Wellpoint as a medical management nurse in Georgia since approximately June 2004.  *Id*. at ¶ 11.

### B.  The Complaint and Procedural History

Even though the three named Plaintiffs have different employment titles, they allege that they  perform similar if not identical roles: "Plaintiff[s] worked in a call center environment, spending the majority of [their] work day on the telephone with providers, hospitals, or members, collecting and inputting data into a computer, following guidelines in performing 'pre-certifications' and/or 'concurrent reviews' of medical procedures or coordinating with providers."  *Id*. at ¶¶ 9, 10, & 11.  They complain that they have been improperly designated as exempt employees under FLSA and were paid a salary when they should have been classified as non-exempt employees eligible for overtime pay.  In this regard, they further allege that they regularly worked hours in excess of forty (40) hours per week and did not receive overtime compensation, as required under the FlSA, for those additional working hours.  *Id*.  These named Plaintiffs bring this action on behalf of all WellPoint employees who work(ed) as utilization review nurses, case management nurses, medical management nurses, or other job titles performing substantially similar job duties for WellPoint's failure to pay them proper overtime compensation for all hours worked beyond the forty (40) hour work week and failure to maintain appropriate records to determine their wages, hours, and other conditions and practices of employment in violation of FLSA.  *Id*. at ¶¶ 14, & 33-35.[1]

In addressing WellPoint's Motion to Dismiss, the Honorable Lawrence E. Kahn, Senior

---

[1]  Based upon the same factual allegations, New York Plaintiff Fay Ruggles also brings a claim arising under New York Labor Law §§ 190 *et seq*., New York Labor Law §§ 650 *et seq*., and the New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142.  Ruggles wishes to make these claims a class action pursuant to FED. R. CIV. P. 23.  Compl. at ¶¶ 19-27 & 39-46.  In terms of our discussion herein, Rule 23 and the New York claims are not relevant and our discussion is confined to the parameters of FLSA.

United States District Judge, found that both the New York causes of action[2] and the "willful" aspect of the FLSA claim survive the Motion to Dismiss and Plaintiffs may pursue liquidated damages and post judgment interest.  Dkt. No. 68, Mem.-Dec. and Order, dated Sept. 24, 2008.[3]

### C. Motion For Conditional Class Certification and Court-Authorized Notice Pursuant to FLSA, 29 U.S.C. § 216(b)

Plaintiffs, on behalf of themselves individually and all other similarly situated employees, bring a Motion for Conditional Class Certification and Court-Authorized Notice pursuant to FLSA, 29 U.S.C. § 216(b).  Dkt. Nos. 37 & 45.  As a necessary component of this Application, Plaintiffs also seek discovery of the names of former and current employees who may be similarly situated.

FLSA § 216(b) states that

[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.  Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.  An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.  The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs

---

[2] Judge Kahn found that the Rule 23 certification issue was premature at that juncture of the litigation and that significantly more information would be required in order for the Court to conduct the mandated rigorous analysis for class certification.  Dkt. No. 68, Mem.-Dec. and Order, dated Sept. 24, 2008, at pp. 7–9.  Since more information is needed for this determination, the discovery process will be critical.

[3] But, Judge Kahn granted in part WellPoint's Motion to Dismiss in that he dismissed Plaintiffs' claim for injunctive relief.  Dkt. No. 68 at pp. 10-11.

of the action. [4]

The basic elements of Plaintiffs' Motion is that they and the potential opt-in plaintiffs (a) share the same call center nurse duties and responsibilities, (b) routinely work more than forty (40) hours per workweek, and (c) are all misclassified as exempt employees and not paid overtime for those hours worked in excess of forty (40) hours. Dkt. No. 37-3 at p. 2. Because the statute of limitations is not tolled and valid claims, if any, are either lost or compromised, and because those who may be similarly situated to the Plaintiffs would not know about this case or even their rights to pursue FLSA claims, Plaintiffs seek to have notice distributed nationally to the putative class members earlier rather than later.

WellPoint opposes this Motion on several grounds: (1) the putative class members share little in common; (2) the putative class members are paid differently (some are salaried and do not receive overtime, while others are paid hourly and are eligible for overtime); (3) the putative class members as nurses are deemed exempt under FLSA; (4) the putative class members have different titles and perform different duties based, in part, on geography, business unit, manager, and time period in which they are employed; (5) WellPoint has a complex business structure that creates significant variances in job duties within the same positions; and (6) due to the mergers and acquisitions, the nature, title, and responsibilities of the positions at issue have changed. *See generally* Dkt. No. 53, Def.'s Mem. of Law.

As a corollary to its Opposition, WellPoint filed Objections to Plaintiffs' Declarations, claiming them to be speculative, conclusory, and without any factual basis. Dkt. No. 54-2, Def.'s

---

[4] At the time the concurrent Motion to Certify a Conditional Class and Motion to Cease and Desist were filed, twenty-one (21) former and current WellPoint employees opted into this action. Dkt. No. 53 at p. 13, n.21. That number of opt-in employees has not changed much since then.

Mem. of Law, dated June 13, 2008.  Plaintiffs filed a Reply to WellPoint's Opposition.  Dkt. No.

55.  A month later, WellPoint filed a Letter-Motion bringing to our attention that the District Court

for the Southern District of New York recently issued *Amendola v. Bristol-Myers Squib Co.*, 558

F. Supp. 2d 2008 (S.D.N.Y.  2008) (citing *In re Initial Pub. Offering Sec. Litig*., 471 F.3d 24 (2d Cir.

2006)), claiming it is directly relevant to the Court's determination of Plaintiffs' Motion.  Dkt. No.

58, Def.'s Lt.-Mot., dated July 3, 2008.  In turn, we permitted Plaintiffs' an opportunity to file a

Letter-Brief in response to WellPoint's July 3rd Letter Motion.  Dkt. No. 62, Pls.' Lt.-Br., dated July

11, 2008.

     D.   WellPoint's Motion for Plaintiffs' Counsel to Cease and Desist Unauthorized
Communication to Putative Class Members.

     WellPoint brings a Motion to direct Plaintiffs' Counsel to cease and desist in any further

inappropriate and unauthorized communications with the putative class members.  Dkt No. 38.

WellPoint complains that Plaintiffs' Counsel, Nichols Kaster & Anderson, PLLP, prior to and during

the commencement of this action, have improperly distributed nationwide notice of this litigation,

by letters and a posted notice at their website, www.overtimecases.com.  Dkt. No. 38-2, Mem. of

Law at p. 4; Exs. 2, 4-7, (Pls.' counsel "advertising material" from January 2 to March 21, 2008) &

3, (posting of this litigation at the above mentioned website).

     Since this action was commenced on February 21, 2008, WellPoint claims that if there is to

be a notice distributed to a putative class in this case, which it ardently opposes, it is the Court that

has exclusive managerial responsibility over the notice mechanism, and neither Plaintiffs nor their

counsel have received permission from this Court to disseminate notice of the lawsuit to potential

collective action members.  Dkt. No. 38-2 at p. 5.  Knowing beforehand that Plaintiffs intended to

ask this Court to issue a notice to the putative class, WellPoint challenges Plaintiffs' Counsel's

independent effort to provide notification about this litigation to the putative class on several grounds: (1) the notice was not authorized and usurps the Court's power to monitor the notice process; (2) the notice and website is misleading, vague, confusing, and bypasses the Court's authority to manage the distribution of any notice; (3) Plaintiffs are not permitted to unilaterally send unsolicited notices regarding this FLSA case; (4) Counsel's website encourages employees to misappropriate confidential and personal information about other WellPoint employees; and (5) there is no First Amendment protection for such a dissemination to a putative class. *See generally* Dkt. No. 38 & 38-2.[5]

Plaintiffs oppose WellPoint's Motion inasmuch as the request is a blanket prohibition on Plaintiffs' ability to communicate with a potential class in contravention of their First Amendment Rights and it may hinder their obligations under FED. R. CIV. P. 11. Dkt. No. 52, Pls.' Mem. of Law, dated June 13, 2008. Specifically, Plaintiffs' claim that their advertising letters and website notice are constitutionally protected commercial free speech and that they are obligated to investigate the underlying facts of the claims in order to meet the requirements of Rule 11. *Id.* Furthermore, they gainsay WellPoint's charge that the advertisement letters and website notice are untruthful. *Id.*

WellPoint filed a Reply to Plaintiffs' Opposition, Dkt. No. 56, and we gave Plaintiffs permission to file a very brief Sur-Reply, Dkt. No. 62.

## II. DISCUSSION[6]

---

[5] WellPoint further postulates that Plaintiffs and their counsel, by submitting the issues and themselves to the Court's authority by filing this Motion, knew full well that the notice process is solely within the province of this Court to the exclusion of Plaintiffs' counsel's effort to provide notice. *See* Dkt. No. 37; *infra* Part 1.C.

[6] The issue of whether a United States Magistrate Judge has jurisdiction to hear this type of motion and render a decision accordingly has been firmly resolved within this Circuit. While the magistrate judge in *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263 (E.D.N.Y. 2005) rendered an analysis that supports a magistrate judge's authority to order discovery of the putative class and to manage the notice process under FLSA, many other magistrate judges have simply
(continued...)

## A.  FLSA § 216(b)

District Courts within the Second Circuit have long recognized that courts have broad discretion in authorizing notice and discovery under FLSA.  Such recognition "comports with the broad remedial purpose of [FLSA] . . . as well as in avoiding multiplicity of suits." *Braunstein v. Eastern Photographic Labs. Inc.*, 600 F.2d 335, 336 (2d Cir. 1979).  Because of the split within the Circuits,[7] the United States Supreme Court eventually confirmed that district courts have discretion, within appropriate cases, to implement FLSA § 216(b) and to play a significant role in prescribing the terms and conditions of communications from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought and to permit discovery of the names and addresses of affected putative members. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-73 (1989).  A court's early intervention in the notice and discovery process is "distinguishable in form and function from the solicitation of claims." *Id.* at 174.

For a collective action under FLSA, Plaintiffs must "establish: (1) that the named plaintiffs and proposed members of the class must be 'similarly situated,' and (2) that the proposed class members consent in writing to be bound by the result of the suit." *Abrams v. Gen. Elec. Co.*, 1996 WL 663889, at *1 (N.D.N.Y. Nov. 4, 1996).  Within the Second Circuit and in other circuits as well, district courts have adopted a two-stage approach to determine whether a cause may be certified

---

[6](...continued)
assumed the responsibility of weighing the appropriate FLSA factors without a similar analysis or critique.  *See e.g.*, *Summa v. Hofstra Univ.*, 2008 WL 3852160 (E.D.N.Y. Aug. 14, 2008); *Mazur v. Olek Lejbzon & Co.*, 2005 WL 3240472 (S.D.N.Y. Nov. 30, 2005); *Legrand v. Educ. Mgmt. Corp.*, 2004 WL 1962076 (S.D.N.Y. Sept. 2, 2004); *Gjurovich v. Emmanuel's Marketplace., Inc.*, 282 F. Supp. 2d 101 (S.D.N.Y. 2003); *Schwed v. Gen. Elec. Co.*, 159 F.R.D. 373 (N.D.N.Y. 1995).

[7]  Prior to the United States Supreme Court resolving this issue, the district court in *Palmer v. Reader's Digest Ass'n, Inc.,* 1986 WL 324 (S.D.N.Y. Feb. 11, 1986), conducted a survey of cases on FLSA's opt-in provision and noted a split amongst the circuits with the Second Circuit taking the minority view.  Notwithstanding this minority view, the *Palmer* Court was compelled to follow *Braunstein v. Eastern Photographic Labs, Inc.*, 600 F.2d 335 (2d Cir. 1979).

under FLSA.  This two-step process is comprehensively articulated in *Lynch v. United Servs. Auto Ass'n*,:

> The first step is the notice stage in which the court determines, based on plaintiffs' pleadings and affidavits, whether the plaintiffs and potential opt-in plaintiffs are sufficiently "similarly situated" to issue notice and allow the case to proceed as a collective action through discovery.  *See Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 367 (S.D.N.Y. 2007).  Once the court determines that potential opt-in plaintiffs may be "similarly situated" for the purposes of authorizing notice, the court "conditionally certifies" the collective action, and the plaintiff sends court-approved notice to potential members.  *Id.*  Those potential plaintiffs may then elect to opt-in pursuant to section 216(b) by filing Consent Forms with the court.  *Id.*  Once notice is accomplished, the action proceeds as a collective action throughout the discovery process.  *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 197 (S.D.N.Y.2006).
>
> During the second stage, the court undertakes a more stringent factual determination as to whether members of the class are, in fact, similarly situated.  *La Belle Farm,* 239 F.R.D. at 367.  This stage typically occurs on a defendant's motion for decertification.  As a result of this two-step stage, the initial "conditional certification" determination is merely a preliminary finding.  *Lee,* 236 F.R.D. at 197. If, after discovery, it is apparent that plaintiffs and others are not similarly situated, the court may "de-certify" the class and dismiss the claims of the opt-in plaintiffs without prejudice.  *See La Belle Farm,* 239 F.R.D. at 367.

491 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2007).

In order to demonstrate there exists a definable class of potential plaintiffs who are similarly situated so that notice may be authorized under FLSA, the named plaintiffs need only make "a modest factual showing sufficient to demonstrate that [they] and potential plaintiffs together were victims of a common policy or plan that violated the law. . . . Plaintiffs' burden is minimal because the determination that the parties are similarly situated is merely a preliminary one that may be modified or reversed at the second stage."  *Levy v. Verizon Info. Servs., Inc.*, 2007 WL 1747104, at *3 (E.D.N.Y. June 11, 2007); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234 (N.D.N.Y. 2002) (quoting *Realite v. Ark Rests., Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998) & citing *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) and *Schwed v. Gen. Elec. Co.*, 159

F.R.D. 373, 375-76 (N.D.N.Y. 1995).

In order for Plaintiffs to meet their burden of making a "modest factual showing" that others are similarly situated in order to be allowed to send court-supervised notices to potential plaintiffs at this first-tier conditional certification stage, WellPoint wants us to adopt the standard expressed by the Honorable Orinda D. Evans, United States District Judge for the Northern District of Georgia in *Johnson v. WellPoint, Inc*., Civ. Case No. 1:06-CV-2430.[8]   In *Johnson*, the district court embarked upon a "high[] level of scrutiny" over the merits of the claim.   *Id*. at p. 6 (quoting *Haynes v. Singer Co., Inc*., 696 F. 2d 884, 886 n.2 (11th Cir. 1983) for the proposition that the court "can think of no good reasons for apparent judicial sponsorship of the notice, at a stage in the litigation when there had been no determination that the plaintiffs's allegations have any merit . . ."). To adopt this stricter standard announced by *Johnson* would invariably defeat the very nature of the two-tier approach and the statutory intent to facilitate a broad remedial purpose, to expedite disposition of the action because of the relatively short statute of limitations, and to promote efficient case management.[9]   The district courts within this Circuit have faithfully held the standard of proof to be minimal rather than arduous.   *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d at 368 ("As a result of this two-step stage, the initial "conditional certification" determination is merely a preliminary finding" while, "[d]uring the second stage, the court undertakes a more stringent factual determination as to whether the members of the class are, in fact, similarly situated.")

---

[8]  WellPoint argues that this Georgia case is identical to this action insofar as plaintiffs therein were employed as a nurse case manager and medical management nurse, who sought conditional certification and judicial notice for a nationwide collective action pursuant to FLSA.

[9]  This higher level of scrutiny is frankly akin to the rigorous analysis under Rule 23.  But, the standard of review for § 216(b) "is markedly different and significantly less strict than that of class certification under Rule 23." *Downer v. Franklin County*, 2003 WL 22319418, at *2 n.1 (N.D.N.Y. Jul. 31, 2003); *Abrams v. Gen. Elec. Co.*, 1996 WL 663889, at *1 n.1 (N.D.N.Y. Nov. 4, 1996).  Accordingly Rule 23 standards for class certification is not relevant to a FLSA collective action.

(citation omitted); *Cuzco v. Orien Builders, Inc.*, 477 F. Supp. 2d 628 (S.D.N.Y. 2007); (noting that all that has to be shown is that the claims are similarly situated to other potential class members, "warranting pre-certification of representative action under FLSA"); *Parks v. Dick's Sporting Goods, Inc.*, 2007 WL 913927, at \*3-4 (W.D.N.Y. Mar. 23, 2007) (declining to apply a fact-specific inquiry at the first stage, and ruling that it would employ a "relatively lenient evidentiary standard in determining whether a collective action is appropriate"); *Downer v. Franklin County*, 2003 WL 22319418, at \*1-2 (N.D.N.Y. July 31, 2003) (quoting *Schwed v. Gen. Elec. Co.*, 159 F.R.D. at 432 ("[P]lanitff need only describe the potential class within reasonable limits and provide a factual basis from which the court can determine if similarly situated potential plaintiffs exist."); *Mete v. New York State Office of Mental Retardation and Dev. Disabilities*, 1993 WL 226434, at \*2 (N.D.N.Y. June 24, 1993) (requiring "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan"). Therefore, we respectfully decline to follow the *Johnson* case.

In its Opposition, WellPoint assailed, at great length, the very nature and merit of Plaintiffs' FLSA claim.[10]  Once again, the courts within our Circuit have fully abided by the instructions in *Hoffmann-La Roche, Inc. v. Spearling*, wherein the Supreme Court told "trial courts [that they] must

---

[10]  For example, WellPoint contends that the putative class members are registered nurses, who are paid on a salaried basis, because they are exempt as "learned professional" under the FLSA regulations. 29 C.F.R. § 541.301(a) and (e)(2); Dkt. No. 53, Mem. of Law at p. 12.  Despite being registered nurses, WellPoint admits that not all registered nurse employees in any of these three categories are paid as salaried exempt employees; many are paid hourly and receive overtime. *Id.* at p. 6. Because employees may have different pay classifications indicates that there does not exist a common policy plan.  In order for this Court to make a determination as to the importance of the learned professional exemption, the legal implication of this pay dichotomy, and the ramifications as to whether a common policy or plan has been in play, discovery becomes vital.  The parties' positions and recitations of the facts are diverse and divergent, calling for both a credibility determination and the need for discovery.  A court need not make any credibility judgments at the initial FLSA notice stage as it would be inimical to the two-step approach. *Kalish v. High Tech. Inst., Inc.*, 2005 WL 1073645, at \*2 (D.Minn. Apr. 22, 2005).  At this juncture of the litigation, little if any discovery has transpired; certainly, not enough to judge credibility.

take care to avoid even the appearance of judicial endorsement of the merits of the action." 493 U.S. at 174; *see Roebuck v. Hudson Valley Farms, Inc*., 239 F. Supp. 2d at 238 (finding that a court "should not evaluate the merits of plaintiffs' claim in determining whether class notice is warranted") (citation omitted).  At this initial stage where all that is being determined is whether potential opt-in plaintiffs may be similarly situated, the court does not weigh the ultimate merits of the claims, resolve factual disputes, make credibility determinations, nor decide substantive issues. *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d at 368; *Realite v. Ark Rests., Corp*., 7 F. Supp. 2d at 308 (underscoring that the court "is certifying the proposed only for notice and discovery purposes" and "is not holding that at this time that all members of the proposed class who will be sent notices are, in fact, similarly situated to plaintiffs").

Although the law does not require that named plaintiffs and the putative class members be or have identical claims, *Abrams v. Gen. Elec. Co.*, 1996 WL 663889, at *2 (N.D.N.Y. Nov. 4, 1996), our Plaintiffs and other opted-in Plaintiffs, whether utilization review nurses, case management nurses, or medical management nurses, have provided ten affidavits which uniformly state, notwithstanding their positions with WellPoint, that

●  their primary job duty is to communicate with members, hospitals, and providers regarding WellPoint's guidelines;
●  they spend the workday making telephone calls, collecting information, and entering data;
●  they review the medical information to see if the requested benefits meet WellPoint's guidelines.  If  the medical information does not meet guidelines they do not have the authority to deny a benefit or service;
●  they work alongside others and believe that other medical management nurses, utilization nurse reviewers, and case management nurses performed the same duties;
●  they do not work in a clinical setting, do not provide direct medical care to members, and do not perform the typical job duties of a registered nurse in a clinical setting;
●  they routinely work over forty (40) hours a week and do not get paid overtime; and
●  they were informed and believe that WellPoint had a company-wide policy of not

*-12-*

paying case management nurses overtime.
Dkt. No. 46-3, Pls.' Affs.

WellPoint attacks these Affidavits as *pro-forma,* providing nothing more than descriptions of "cookie-cutter jobs." Dkt. No. 53 at p. 10. In its view, Plaintiffs have broadly and imprecisely attempted to define this putative class. In a lengthy discourse, WellPoint asks this Court to strike these Affidavits as being speculative, conclusory, and lacking a factual basis. Dkt. No. 54-2. To amplify the fragility of Plaintiffs' Affidavits, WellPoint submits numerous Affidavits, approximately sixty-six (66), from other employees countering Plaintiffs' asseverations and highlighting that employees within these various job categories throughout this vast, complex national corporation may be paid differently, performed dissimilar responsibilities, and approach their tasks differently. Dkt. No. 53, Ex. 26-83; *see also* Def.'s Mem. of Law at pp. 5-11.[11] But, it is unnecessary at this stage to show that putative class members must share identical positions. *Schwed. v. Gen. Elec. Co.*, 159 F.R.D. at 374. Conversely, even though Plaintiffs' Affidavits were exceptionally similar, this should not defeat their Application for conditional certification and court-approved notice. *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d at 239 (identifying the affidavits as being similar); *Realite v. Ark Rests., Corp*., 7 F. Supp. 2d at 307) (noting that plaintiffs submitted ten affidavits uniformly indicating the exact same points and positions).

Notwithstanding WellPoint's opposition to Plaintiffs' Affidavits with sixty-six (66) of its own in an attempt to show that the employees were not similarly situated and challenge Plaintiffs' ability to show any common policy or plan, such opposition would not defeat Plaintiffs, at this fist

---

[11] WellPoint has vigorously disputed that a common policy or plan exists in a well documented Opposition. Frankly though, this well documented Opposition has the earmarks of a motion for summary judgment, which we view as premature in the first stage of this two-tiered approach. Raising that there are various pay models for employees who were work in similar classifications, which would dispute the existence of a common plan or policy, will be a critical point at some juncture in this litigation, but not now.

step, if they have met their initial burden. *Levy v. Verizon Info. Servs. Inc*., 2007 WL 1747104, at

*4. To balance the parties' competing affidavits at this stage would require us to determine the facts,

determine credibility of deponents, and resolve legal contentions, all of which we are directed to

avoid. And, the fact that there may be variations within job duties does not mean that conditional

certification should be denied at this preliminary stage of the litigation. *Parks v. Dick's Sporting

Goods, Inc*., 2007 WL 913927, at *4. Plaintiffs are not required to submit evidence implicating

every office and to show how they have identical characteristics; instead, only a representative

sample will suffice. *Id.* at *5. As long as Plaintiffs' Affidavits are sufficiently similar to constitute

a preliminary showing that they and other potential plaintiffs together were victims of a common

policy or plan, they may have met their burden for the conditional class certification. *Roebuck v.

Hudson Valley Farms, Inc.*, 239 F. Supp. 2d at 239. And, as long at the Complaint, which has

survived the Motion to Dismiss, and the Affidavits establish enough of a factual nexus between the

situation of Plaintiffs and others, together they would be sufficient to determine that Plaintiffs and

the putative class are similarly situated. *Realite v. Ark Rests. Corp*. 7 F. Supp. 2d at 307-08. We

cannot forget that presently we have twenty-one (21) Plaintiffs, the three original Plaintiffs and

eighteen (18) opt-ins. We have ten (10) Affidavits supporting the Motion, which come from seven

(7) of the fourteen (14) states where WellPoint has call centers, and from various call centers within

these states. They have provided preliminarily convincing allegations that there are others similarly

situated to them. Moreover, all of WellPoint's challenges to the merit of the claims and whether

the putative class members are similarly situated are premature and best reserved for the second

stage of the class analysis.[12]  *Hoffmann-LaRoche v. Sperling*, 493 U.S. at 174 ("In exercising the

discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect

judicial neutrality.  To that end, courts must take care to avoid even the appearance of judicial

endorsement of the merits of the action.").

The issue as to who is entitled to receive notice at this stage is not determinative as to the

class certification.  *Levy v. Verizon Info. Servs., Inc.*, 2007 WL 1747104, at *5.  At the second stage,

the court will undertake a more stringent factual determination as to whether the members of the

class are, in fact, similarly situated.  *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d at 367-68

(citing *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007)).  If

discovery reveals that Plaintiffs are not similarly situated with other employees, the Court is in the

---

[12] WellPoint asks this Court to carefully and thoroughly weigh the merits of this case, relying upon *Amendola v. Bristol-Meyers Squibb Co.*, 558 F. Supp. 2d 459 (S.D.N.Y. 2008).  *See* Dkt. No. 58, Def.'s Lt-Mem., dated July 3, 2008.  In *Amendola*, which was a FLSA case, the district court was asked to address plaintiff's request for authorization for notice for a collective action, discovery of names and addresses of defendant's employees, and equitable tolling of the statute of limitations.  As to the request that plaintiff needed names of employees, the court employed a novel tactic of allowing a random though selective regional discovery of employees' names from the defendant's business units, which was approximately 350 employees.  The Court allowed discovery of other documents and depositions of a group of these employees and defendant's executive.  After that preliminary stage of discovery, plaintiff renewed its request for authorization to go forward with notices to putative class members.  In considering the request for the notice and further discovery of a much wider range of employees, the district court engaged in a full exploration of the merits of plaintiff's claims, contrary to other precedents.  In determining that a close scrutiny of the merits was warranted, the district court relied upon *In re Initial Pub. Offering Sec. Litig.*, (*In re IPO*) 471 F.3d 24 (2d Cir. 2006).  *Amendola v. Bristo-Meyer Squibb Co.*, 558 F. Supp. 2d at 467 n.9.  *In re IPO* was primarily concerned with the standards for class certification under FED. R. CIV. P. 23, not FLSA § 216(b).  Other court precedents, which are cited above, have noted a marked distinction between the standards required by Rule 23 and those required under FLSA's two-tier approach.  Because the FLSA statute of limitations is not tolled unless a potential plaintiff opts in, making time of the essence, the general thinking is that an earlier and less rigorous review for conditional certification would permit potential plaintiffs ample time to weigh the benefits of joining a lawsuit that alleges a FLSA violation.  Unlike a class action under Rule 23, putative class members are excluded unless they timely elect to participate in a collective action. But in order to do so they need early notice.  This lenient initial stage review, however, does not dispense with a review of the merits of class certification.  It just defers it to a later stage. Before the putative class is finally certified as a class action under Rule 23, a review of the merits would ensue and the conditional class certification could be decertified if the class members are found not similarly situated or the merits of the claims are weak.  Moreover, Judge Kahn, weighing the four prerequisites for a class action as specified in Rule 23(a), found that Plaintiffs adequately plead sufficient facts to meet those requirements and survive the Motion to Dismiss and announced that the rigorous Rule 23 analysis was premature. Dkt. No. 68 at pp. 5-7.  At this juncture of the litigation, we are not prepared to follow *Amendola*'s lead and apply a Rule 23 strict analysis to this FLSA claim.  Therefore, we decline WellPoint's overture to conduct a thorough analysis of the merits of this claim now.

position to decertify this conditional class.  *Id*. at 367 & 369.

### B.  Discovery of Putative Class

In conjunction with providing notice to a putative class, we must consider whether discovery of the names and addresses of similarly situated employees is warranted.  Plaintiffs seek the production of a list of all care center nurses nationwide within the last three years.  It is simple commonsense that the employees who may or have shared the same occupational duties as the named Plaintiffs need to have notice of this action so that they can determine if they are affected by a common policy or plan that may curtail their statutory rights to overtime.  Plaintiffs need to be provided with their names and addresses so that they can inform them of this action.

When a court approves notice to the putative class, discovery of the names and addresses of putative class members has consistently been granted.  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. at 170 (noting that the district court was correct in permitting discovery); *United States v. Cook*, 795 F.2d 987 (Fed. Cir. 1986); *Summa v. Hofstra Univ*., 2008 WL 3852160 (E.D.N.Y. Aug. 14, 2008); *Roebuck v. Hudson Valley Farms, Inc*., 239 F. Supp. 2d at 240.  To appraise the scope of discovery, we must first determine who would be eligible to receive this Court's approved notice.

Plaintiffs have established that those employees who work as utilization review nurses, medical management nurses, and case management nurses should comprise this conditional certified class.[13]  However, Plaintiffs have failed to persuade this Court that any and all other call center nurses are similarly situated to the above-described categories of employees.  Therefore this putative class notice will not include all call center nurses and will be confined to only the identified three categories.

---

[13]  The record suggest that conceivably 100 employees in New York could be affected and possibly 400 nationwide. Compl. at ¶ 5.

WellPoint submits that if discovery is required, the relevant period should be two years and not three years.  The discovery period, which is the statute of limitations, would be three years if the employer's violation was wilful.  29 U.S.C. § 255(a).  A wilful violation exists when an employer knew or recklessly disregarded that its conduct violated the FLSA.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The Complaint alleges that WellPoint "failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practice of employment."  Compl. at ¶ 35.  In deciding the Motion to Dismiss, Judge Kahn weighed the law as it pertains to the standard of wilfulness under the FLSA and concluded that Plaintiffs alleged sufficient facts to maintain the claim that Defendant willfully violated the FLSA.  Dkt. No. 68 at pp. 9 & 10.  Realizing that the wilful violation claim survives, and considering our lenient standard of review in terms of directing discovery, we accept that the relevant period for disclosure shall be three years.  *Roebuck v. Hudson Valley Farms, Inc*., 239 F. Supp. 2d at 240 (finding that even though the wilful violation had not been pled, the court determined the relevant discovery period to be three years and that discovery will confirmed if wilfulness existed).

Now that the Motion to Dismiss has been decided and this Court has issued a Uniform Pretrial Scheduling Order on July 18, 2008, which sets, *inter alia*, the discovery deadline as of September 17, 2009, there is no need, as WellPoint requests, for the list of putative class members to be provided to a third-party administrator and not directly to Plaintiffs.  This list of former and current employees for the relevant period in the above-identified job classifications shall be disclosed directly to Plaintiffs.  However, this disclosure will not include potential plaintiffs' telephone numbers or the last four digits of their social security numbers as Plaintiffs have

requested.  *See* Dkt. No. 37-3 at p. 3.

### C.  Motion to Cease and Desist

Plaintiffs' counsel has already engaged  in sending "advertisement letters" and posting to their website notices regarding this litigation.  Because a Complaint and a Motion for Notice has been filed with this Court, which have triggered the Court's "managerial responsibility to oversee the joinder of additional parties to assure that the task [of giving notice] is accomplished in an efficient and proper way," *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. at 170-71, WellPoint encourages us, for sundry reasons, to issue an order directing Plaintiffs to cease and desist in their efforts.  *See infra* Part I.D.[14]

We agree with Plaintiffs' counsel that they have a First Amendment right to constitutionally protected commercial speech in its advertisement to a putative class, but it is not absolute.  *Compare Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 472 (1988) (finding that lawyer advertising is within "the category of constitutionally protected commercial speech") (citations omitted) *with Florida Bar v. Went of It, Inc.*, 515 U.S. 618 (1995) (ruling that lawyer advertising as commercial speech is not absolute and may be regulated pursuant to the framework cast in *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980)).  In order for the Court to issue a restraint on communications with a putative class, it "must be based upon a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981).  But if there is a record of abuse or misleading statements, the court should act to correct it. *Frye v. Baptist Mem'l Hosp.*, Inc., 2008

---

[14] During the Hearing, Plaintiffs represented that they ceased sending out advertisement letters when WellPoint filed its Motion to Cease and Desist.  However, WellPoint noted that Plaintiffs' Counsel's website has a statement that very much mirrors the proposed notice.

WL 2117264, at *4 (W.D.Tenn. May 20, 2008) (further noting that a complete ban on pre-certification communications is not warranted).  WellPoint lists a litany of abuses and misleading statements in Plaintiffs' Counsel's notices to the putative class.  As we know, misleading communications, "may be countered by court-authorized notice" in order to "ensure timely, accurate, and informative" notice to the putative class.  *Hoffman-La Roche*, 493 U.S. at 171-72. And, as we noted above, we are now taking the reins of the notice process and we will set all of the parameters of that process.  *Barrus v. Dick's Sporting Goods, Inc.*, 465 F. Supp. 2d 224 (W.D.N.Y. 2006) (in this context, finding that the court has the authority to limit post-notice discovery to a reasonable sample).

Now that the Court is fully engaged in supervising this notice process, if Plaintiffs do not desist in employing advertisement notices to the putative class, there could be an apparent conflict between the court-authorized notice and those communications made by counsel to potential plaintiffs.  There is also the potential for abuse and confusion.  By resolving this conflict, we are not ruling that Plaintiffs' pre-certification notice efforts were not constitutionally permitted.  Yet, to bring order and efficiency to the notice process, the court-controlled mechanism should trump any attorney driven notice and resolve any post-conditional certification notice in favor of the Court's controlled process.  Failure to limit notification to a single process would be dissonant with the intent of the FLSA statute that the Court play a significant role in prescribing the terms and conditions of communications from the named plaintiffs to the potential members of the class on whose behalf the collective action was commenced.  By exercising the duty imposed by the FLSA statute as consistently construed by court precedent, and the broad authority granted to exercise control, we will enter an order governing the conduct of all parties, fashion a reasonable notice, and

prevent the potential for deception and confusion.  *Gulf Oil v. Bernard*, 452 U.S. at 100.

Going forward, and to the extent necessary, this Court directs Plaintiffs' Counsel to cease in its advertisements to the putative class and remove from its website any notice of this litigation that does not comport with the court-approved notice.[15]

### III. CONCLUSION

Plaintiffs have proposed a notice and consent to sue form to be used as our court-approved notice. Dkt. No. 46-2, Ex. A, Proposed Notice.  That notice is similar to the one sanctioned in *Lynch v. United States Serv. Auto Ass'n*, 491 F. Supp. 2d 357, 372-74 (S.D.N.Y. 2007).  Dkt. No. 46-4, Ex. C.  WellPoint asked this Court that if we grant conditional certification in order to permit notice to the putative class members, they be given an opportunity to confer with Plaintiffs and draft a notice that would be fair and balanced.  To allow antagonistic parties to attempt to delve into a corroborative venture such as drafting an appropriate notice is intriguing, but perhaps unrealistic. Other courts have attempted similar type of engagements only to see them fail.  *See e.g.*, *Barrus v. Dick's Sporting Goods, Inc.*, 465 F. Supp. 2d 224, 231-32 (W.D.N.Y. 2006).   The parties noted at the Hearing that they, in fact, have successfully engaged in proposing a joint notice in order cases. The *Lynch* notice was a corroborative effort.  Based upon these assurances, we will allow the parties an opportunity to corroborate and propose a court approved notice, albeit on a very limited duration.

Accordingly, based upon all of the foregoing, it is

**ORDERED**, that Plaintiffs' Motion for Conditional Certification for the purpose of issuing a court-authorized notice to potential opt-in plaintiffs in this collective action under 29 U.S.C.

---

[15] Plaintiffs were concerned that if this Court did not grant their Motion for Conditional Certification, we would issue an order directing them not to file any advertisement notice, even if the notice may be regarding pursuing a similar claim in another jurisdiction.  We were not prepared to issue such a comprehensive order nor are we assured that the law would grant us that authority.  This Order of Cease and Desist pertains solely to this litigation.

§216(b), Dkt. No. 37, is **granted in part and denied in part**; and it is further

**ORDERED**, that the class of potential opt-in plaintiffs entitled to notice is defined as utilization review nurses, case management nurses, and medical management nurses, but shall not included "any other similar position," nationwide during the three-years prior to the filing of the Complaint; and it is further

**ORDERED**, that WellPoint shall provide Plaintiffs with the names and last known addresses of potential plaintiffs within the above-ordered employment titles for the three-year period preceding the filing of this Complaint and consistent with this Memorandum-Decision and Order and within thirty (30) days of the filing date of this Memorandum-Decision and Order; and it is further

**ORDERED**, that the time period within which potential plaintiffs may opt in is nine (9) months. The opt-in period will commence to run on the date that WellPoint provide the names and addresses of potential class members to Plaintiffs; and it is further

**ORDERED,** that the parties shall have ten (10) days from the filing date of this Memorandum-Decision and Order to present to this Court a jointly proposed notice to the putative class for the Court to approve. Failure to present such joint notice timely will lead this Court to draft the court-approved notice without further assistance from the parties; and it is further

**ORDERED**, that WellPoint's Motion to have Plaintiffs' Counsel cease and desist in sending notice to the putative class, Dkt. No. 38, is **granted** to the extent that this Order is prospective and addresses conduct subsequent to the filing date of this Order and denied in all other respects.

**IT IS SO ORDERED**.

November 6, 2008
Albany, New York

_____

RANDOLPH F. TREECE
United States Magistrate Judge