UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

FAY RUGGLES, ANTOINETTE BOONE,
GEORGIA WOODRUFF, MAURICE
BILLMAN, KAREN HAWKINS,
HARRIET CHILDRESS, and NANCY
COLEMAN, on behalf of themselves and
all similarly situated employees

                     Plaintiffs,

     -against-                              1:08-CV-0201(LEK/RFT)

WELLPOINT, INC.,

                 Defendant.

## MEMORANDUM-DECISION and ORDER[1]

## I.    INTRODUCTION

Pending before the Court are Motions seeking the certification and the denial of certification of proposed Rule 23 classes for alleged violations of New York, California, and Illinois wage and hour laws.  See Dkt. Nos. 197, 198, 200, 204.  For the reasons that follow, Plaintiffs' consolidated Motion for class certification (Dkt. No. 204) is denied, and Defendant's Motions for denial of certification of a New York Rule 23 class (Dkt. No. 197); a California Rule 23 class (Dkt. No. 198); and an Illinois Rule 23 class (Dkt. No. 200) are granted.

## II.    BACKGROUND

### A.  Factual Background

Plaintiffs are all registered nurses ("RNs"), employed, or previously employed by Defendant WellPoint, Inc. ("Defendant" or "WellPoint") in the position of "Utilization Review Nurse," "Case

---

[1] For printed publication in the Federal Reporter.

Management Nurse," or "Medical Management Nurse."  Am. Compl. (Dkt. No. 166) ¶ 1.

WellPoint, one of the nation's largest health benefits companies, is a complex corporate entity

headquartered in Indianapolis, Indiana, which provides health insurance benefits and services to

approximately 34 million customers nationwide.  Among the services WellPoint provides are

"medical management," "case management," and "utilization review."[2]  Formed in 2004, WellPoint

has a corporate presence in California, Colorado, Connecticut, Georgia, Indiana, Kentucky, Maine,

Missouri, Nevada, New Hampshire, New York, Ohio, Virginia, and Wisconsin.  See Ginzinger

Decl. (Dkt. No. 53-3) ¶¶ 2-4.

    WellPoint's current structure is the result of numerous mergers and acquisitions, some of

which are pertinent to the instant Motions.  See Ginzinger Decl. (Dkt. No. 53-3) ¶¶ 3-4; Welker-

Finney Decl. (Dkt. No. 200-2) ¶¶ 4-6.  In 1992, Blue Cross of California created a for-profit entity,

WellPoint Health Networks Inc., to operate its managed care business.  Blue Cross of California, a

managed care program in California, and Blue Cross Life and Health Insurance Company, an

insurance program in California, became subsidiaries of WellPoint Health Networks Inc., operating

under the trade names Anthem Blue Cross and Anthem Blue Cross Life & Health Insurance

---

[2] The parties dispute the precise meaning and scope of these services.  "Medical management" appears to encompass "utilization management" and "case management."  Broadly speaking, Utilization management involves the gathering and reviewing of medical information on a WellPoint policy holder from health care providers, comparing such information against WellPoint policies and guidelines, and conducting precertification, concurrent, and/or retrospective reviews that have bearing on the policy-holder's eligibility for requested health benefits and service.  Case management involves communicating with policy holders, providers, and other parties to coordinate and align the insured's care with WellPoint care plans, answering the insured's questions, discussing and developing long and short term health and lifestyle goals for policy holders, and providing them with educational information.  Neither service involves providing direct medical care.  Dkt. Nos. 204 at 6-13; 214 at 6-20; Srey Aff, Exs. D-E (Dkt. Nos. 204-7, 204-8); Srey Aff., Ex. A, WellPoint Do's and Don't(s) Guidelines (Dkt. No. 204-4).

Company (collectively "Anthem Blue Cross").  Welker-Finney Decl. (Dkt. No. 200-2) ¶¶ 4-6.

UniCare Life & Health Insurance Company ("UniCare") existed as another subsidiary of WellPoint Health Networks Inc. and in 1995 became the brand name for the parent company's non-Blue Cross Blue Shield businesses operating outside of California.  In early 2000, WellPoint Health Networks Inc. acquired Rush Prudential Health Plazas in Illinois.  Id. ¶ 5.

WellPoint, Inc. was formed in November 2004, when WellPoint Health Networks Inc. merged with Anthem, Inc.  Ginzinger Decl. ¶ 3-4; Welker-Finney Decl. (Dkt. No. 200-2) ¶¶ 4-6.  Anthem Blue Cross continues to operate in numerous locations throughout California, including Anaheim, Camarillo, Costa Mesa, Fresno, Glendale, Los Angeles, Modesto, Newbury Park, North Hollywood, Oakland, Pomona, Rancho Cordon, Sacramento, San Bernardino, San Diego, San Francisco, San Jose, Santa Barbara, Thousand Oaks, Visalia, Walnut Creek, West Hills, and Woodland Hills; it employs registered nurses in the following job positions: Nurse Case Manager I, Nurse Case Manager II, Nurse Case Manager Senior, Nurse Case Manager Lead, Nurse Medical Management I, Nurse Medical Management II, Nurse Medical Management Senior, and Nurse Medical Management Lead.  Welker-Finney Decl. (Dkt. No. 200-2) ¶ 7-8.  Unicare continues to operate in a number of locations in Illinois, including: Chicago, Deerfield, Mt. Vernon, Schaumburg, and Westchester; it employs registered nurses in the following job positions: Nurse Case Manager I, Nurse Case Manager II, Nurse Case Manager Senior, Nurse Case Manager Lead, Nurse Medical Management I, Nurse Medical Management II, Nurse Medical Management Senior, Nurse Medical Management Lead, and HMC Nurse Care Manager Senior.  Id. ¶¶ 9-10.[3]

---

[3] WellPoint human resources and payroll data indicate that further job classifications may exist under the umbrella job categories at issue in this action.  Havette Decl. (Dkt. No. 214-2) ¶ 3.

Subsequent to its formation, WellPoint continued expanding its operations, including through its December 2005 acquisition of WellChoice Inc. and WellChoice Inc. subsidiary, Empire Blue Cross Blue Shield ("Empire").  Through that deal, WellPoint acquired Empire's New York operations, including those in Albany, Brooklyn, Melville, and New York City.  Pekrol Decl. (Dkt. No. 197-1, Ex. 6) ¶¶ 1, 3.  Under Empire, all nurse employees, regardless of their duties, carried the same title, "Case Manager."  Id. ¶ 6.  Following Empire's acquisition by WellPoint, all of Empire's employees became employees of WellPoint.  As part of the restructuring, nurse employees previously designated uniformly as "Case Managers" took on various job titles including "Utilization Review Nurse," "Medical Management Nurse," and "Case Manager Nurse."  Id.

According to WellPoint, the legacy organizations from which its current structure is derived employed registered nurses in differently titled positions who performed a wide array of duties that varied based on the entity that employed them.  Ginzinger Decl.  WellPoint insists that variation survives to date, yielding significant differences among its nurses nationwide in terms of the duties they perform and their compensation structure both within and across job categories.  See, e.g., Ginzinger Decl. (Dkt. No. 53-3); Pekrol Decl. ¶ 8; Fooks Decl. (Dkt. No. 200-6) ¶ 10; Nieweglowski Decl. (Dkt. No. 200-6) ¶ 7.  Nurses in the job titles at issue work in a variety of different departments, often specializing in discrete areas of WellPoint's business, and are employed in different settings including large buildings, small office complexes, hospitals, and their own homes.  Dkt. No. 53 at 4-5.  Nevertheless, Plaintiffs contend that WellPoint has devoted itself to a program of "job mapping" that has achieved substantial uniformity nationwide, and they have submitted job descriptions for the "job families" of Medical Management and Case Management that they claim are applicable to all WellPoint employees.  Mem. in Supp. Mot. to Certify (Dkt. No.

204-2) ("Pls.' Certification MOL") at 15-16; Selby Dep. at 64-72, 77-80, 85-89, 101, 120-21; Srey

Aff, Exs. D-E (Dkt. Nos. 204-7, 204-8).  Each job family contains several subcategories, or grades,

and while some of the "Core Content" and "Roles" for the subcategories overlap, variation based on

grade is also readily apparent in the descriptions.  For example, in the Medical Management family,

all grades conduct pre-certification, concurrent, and retrospective reviews, guide customers to

covered care options, identify discharge planning needs, and work with hospitals and healthcare

providers; the higher grades handle complex cases, act as company representatives, develop training

materials, and monitor and prioritize workflows.  See Dkt. No. 204-7.  Similarly, in the Case

Management family, all grades conduct assessments to identify insured's needs and goals, prepare

and implement suitable case management plans, link policy holders with appropriate care facilities

and providers, and participate in "rounds."  The higher  grades are described as fulfilling additional

functions, such as acting as a preceptor, facilitating conflict resolution, monitoring workflows, and

evaluating the Utilization Management processes.  Dkt. No. 204-8.  Both job families' descriptions

note that all grades shall be expected to "[p]erform other related duties as required."

Some WellPoint nurses utilize various guidelines and regulations, produced or endorsed by

WellPoint, as tools in making their managed care recommendations.  These include, but are not

limited to the Milliman Guidelines, WellPoint Clinical Guidelines, NICU Guidelines, ACOEM

Guidelines, MTUS Guidelines, and McKesson Guidelines.  See, e.g., Whitney Decl. ¶ 6; Parisi Dep.

(Dkt. No. 215-15) at 29; Kennedy Dep. (Dkt. No. 204-14) at 17:1-3.  From the interrogatory

responses and deposition testimony, the Milliman Guidelines appear to be widely used in utilization

review.  Numerous deponents and declarants attest to collecting clinical information on an insured,

comparing these against the insured's policy and the Milliman Guidelines and approving the

requested benefit or service if the relevant Milliman criteria were met; if they were not met, under

WellPoint policies, the nurse could not deny the request but would send the insured's information to

a physician reviewer.  But see Sager Dep (Dkt. No. 214-15) at 49-51 (Nurses in Nation Accounts

can authorize a requested benefit even if it does not meet the guidelines).  Similar testimony exists

from Case Managers, with WellPoint care plans providing the criteria for evaluating an insured's

needs and generating appropriate care plans.  See Pls.' Certification MOL at 7-13 (overviewing

certain testimony).

The Milliman Guidelines open with a disclaimer:

> The appropriate use of these *Guidelines* requires professional medical judgment . . . .
> Professional medical judgment is required in all phases of the health care delivery and
> management process that should include consideration of the individual circumstances of
> any particular patient.  These *Guidelines* are not intended as a substitute for this important
> professional judgment.
> Use of the *Guidelines* as a basis for denying authorization for treatment without proper
> consideration of the unique characteristics of each patient or as a basis for denying payment
> for treatment received is an inappropriate use of the *Guidelines*.

*Milliman Care Guidelines: Inpatient and Surgical Care*, 8th ed. (Dkt. No. 216-4) at viii.  The

Guidelines' Introduction reiterates this point: "Use of the *Guidelines* requires, and never replaces,

clinical judgment."  Id. at 1.

WellPoint issues company-wide policies emphasizing that it does not provide medical

services and strives to avoid the appearance of providing such services.  The policies coach

employees on the correct vocabulary to employ so as to ensure the understanding that WellPoint

nurses assist in providing health benefits, health education, and other health related services for

"members," but do not engage in the practice of medicine for "patients."  Srey Aff., Ex. A,

WellPoint Do's and Don't(s) Guidelines (Dkt. No. 204-4).

**B.  Procedural History**

6

On February 21, 2008, Plaintiffs Fay Ruggles, Antoinette Boone, and Georgia Woodruff, on behalf of themselves and all similarly situated employees, filed a class action and collective action Complaint, alleging, *inter alia*, that Defendant failed to pay required overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and state labor law and regulations.  Compl. (Dkt. No. 1).  Ruggles, Boone, and Woodruff claim that Defendant's failure to pay overtime wages results from its improper classification of utilization review nurses, case management nurses, and medical management nurses as "exempt" salary employees.  Id. Accordingly, they brought a collective action under the FLSA on behalf of all persons who Defendant employed nationwide in those three job categories.  Id.  Defendant denies any violation and avers that the nurses in the relevant positions qualify under the "administrative" or "professional" exemptions provided for by state and federal law.  Answer (Dkt. No. 79).  On largely the same facts, Plaintiff Ruggles asserts a claim arising under New York Labor Law §§ 190 *et seq.*, New York Labor Law §§ 650 *et seq.*, and the New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142.  Compl. ¶ 21.  Ruggles brings the New York claim as a class action, pursuant to Federal Rule of Civil Procedure 23.  Compl. ¶¶ 9, 19; see also Am. Compl. ¶ 25.

On May 5, 2008, Defendant moved to dismiss or strike the New York class action allegations and claims for individual relief asserted by Ruggles, and to dismiss or strike certain claims arising under the FLSA.  Dkt. No. 19.  Shortly thereafter, Ruggles, Boone, and Woodruff moved for conditional certification and court-authorized notice pursuant to 29 U.S.C. § 216(b). Dkt. No. 37.  On September 24, 2008, this Court largely denied Defendant's Motion to dismiss, and found that while Plaintiffs' Complaint was facially sufficient, certification of the proposed Rule 23 class would be premature as there was insufficient evidence at that juncture to determine whether

the conditions for certification are met.  Ruggles v. Wellpoint, Inc., 253 F.R.D. 61, 65-67 (N.D.N.Y. 2008) (Kahn, *J.*).  The Court noted,

> [t]o determine whether Plaintiff Ruggles is entitled to certification of the putative New York class, the Court requires a significant amount of information that will likely surface in discovery.  Namely, the similarity or dissimilarity of the three job classifications Plaintiff Ruggles seeks to represent is an outstanding factual question that is central to the scope of the putative class.  Without evidence addressing the actual duties of case management nurse, medical management nurse, and utilization review nurse . . . the Court cannot be assured that any of the four prerequisites delineated in Rule 23(a) are satisfied.

Id. at 67.

On November 6, 2008, Magistrate Judge Treece granted conditional certification under the FLSA (the "FLSA class"), ordering that "the class of potential opt-in plaintiffs entitled to notice is defined as utilization review nurses, case management nurses, and medical management nurses . . . nationwide during the three-years prior to the filing of the Complaint."  Dkt. No. 73.  On October 16, 2009, after the expiration of the FLSA opt-in period, Plaintiffs filed an Amended Complaint, re-alleging the earlier claims; naming Maurice Billman, Karen Hawkins, Harriet Childress, and Nancy Coleman as additional Plaintiffs (collectively with Ruggles, Boone, and Woodruff, the "Named Plaintiffs"); asserting additional state law claims under California and Illinois wage and hour laws on behalf of the individual Named Plaintiffs and as Rule 23 class actions.  Dkt. No. 166.  The Amended Complaint states seven causes of action, each for essentially the same conduct, improperly classifying the Named Plaintiffs and proposed class members as "exempt" salary employees under federal and state labor laws that mandate overtime wages for hours worked over forty hours per week.  The claims for relief are brought as follows: the first under the FLSA; the second under New York Labor Law Article 19, §§ 650 *et seq.* and 12 N.Y.C.R.R. 142; the third through sixth under California Wage Order No. 4, the California Labor Code §§ 510 and 1198, 226

8

and 1174, and 201, 202, and 203, and California Unfair Competition Law, California Business and Professional Code § 17200 *et seq.*; and the seventh under the Illinois Minimum Wage Act, 820 Ill. Comp. Stat. § 105/1, *et seq.*, and the regulations promulgated thereunder, Ill. Admin. Code, tit. 56 §§ 210.100 *et. seq.*

Discovery has proceeded with great divisiveness between the parties, requiring numerous discovery-related conferences and court orders by Magistrate Judge Treece. The scope of discovery was partially resolved by Judge Treece's January 4, 2010 Memorandum-Decision and Order, which allowed ten interrogatories, drafted by the Court, to be directed to each opt-in Plaintiff, but limited depositions to 25% of randomly selected Plaintiffs and restricted these depositions to 2.5 hours each. Dkt. No. 176. The interrogatories provided by the Court include requests for Plaintiffs to identify and produce degrees, diplomas, certificates, and licenses; state the number of hours worked as a case management, utilization review, or medical management nurse; and describe the duties and responsibilities associated with those positions and the amount of time devoted to each on a daily basis. Dkt. No.176, App. A.

After extensive discovery, on March 26, 2010, Defendant preemptively filed three separate Motions to deny Rule 23 class certification of the New York class (Dkt. No. 197), Illinois class (Dkt. No. 200), and California class (Dkt. No. 198). On March 30, 2010, the Named Plaintiffs filed a Consolidated Motion to certify all three classes pursuant to Rule 23(b)(3). Dkt. No. 204. The Named Plaintiffs seek to be designated class representatives and Nichols Kaster, PLLP to be named class counsel.[4] Pls.' Certification MOL at 35. Each side has attached to its various submissions

---

[4] Defendant, who had noticed the Named Plaintiffs months prior, sought an order immediately granting them access to depose the representatives of the proposed Illinois and California classes for 2.5 hours each. Dkt. No. 206. The Magistrate Judge denied this request,

hundreds of pages of deposition testimony from numerous putative class members, declarations, interrogatory responses, documentation of WellPoint policies, job descriptions, and other materials. Plaintiff argues this documentation supports class certification; Defendant asserts it demonstrates the unsuitability of the class action vehicle to this litigation.

## III.    LEGAL FRAMEWORK

### A.  State Law Claims

#### 1.  New York

Under New York Department of Labor Regulations, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. § 201."[5]  12 N.Y.C.R.R. § 142-2.2.  While the Regulations expressly reference the exemptions of the FLSA, New York law also contains its own exemptions.  See 12 N.Y.C.C.R.R.142-3.12(c)(2).  Thus, state and federal regulation exempt those who "work in a bona fide executive, administrative, and professional capacity from these overtime wage laws."  Id.; N.Y. LAB. LAW § 651(5)(c); 29 U.S.C. § 213(a)(1); Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 105 (2d Cir. 2010).

#### 2.  Illinois

Illinois law generally requires employers to compensate non-exempt employees at not less than one and one-half times their regular rate for any work performed in excess of forty hours per

---

though he mandated that the sought depositions must occur by May 21, 2010, noting that this was after the date when oppositions to the various certification Motions were due.  Dkt. No. 208.

[5] As discussed below, Section 13(a)(1) of the FLSA provides an exemption from both minimum wage and overtime pay requirements for those employed as bona fide executive, administrative, professional and outside sales employees.

workweek.  See 820 ILL. COMP. STAT. 105/4a(1).  An exemption applies to  "[a]ny employee employed in bona fide executive, administrative or professional capacity . . . as defined by or covered by the Federal Fair Labor Standards Act of 1938 and the rules adopted under that Act . . . ." 820 ILL. COMP. STAT. 105/4a(2)(E); Ross v. RBS Citizens, N.A., No. 09 CV 5695, 2010 WL 3980113, at *7 n.9 (N.D. Ill. Oct. 8, 2010).

### 3.  California

Under California law, subject to certain exemptions, employers must pay employees an overtime rate of not less than one and one-half times their regular rate where such employees work more than eight hours in any workday or more than forty hours in any workweek.  CAL. LAB. CODE §§ 510, 1198; Cal. Indus. Welfare Comm'n Wage Order ("IWC Wage Order") 4-2001.  State law additionally requires that, at the time of each payment of wages, an employer shall provide each employee with a wage statement itemizing, among other things, the total hours worked by the employee in the pay period.  CAL. LAB. CODE § 226(a).

### 4.  Exemptions

As noted, both New York and Illinois law incorporate, at least in part, the exemptions from the overtime pay requirement that are provided for under the FLSA and its attendant regulations.[6] See 29 U.S.C. § 213(a)(1) (exempting those "employed in a bona fide executive, administrative, or

---

[6] "[T]he application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof."  Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974); Bilyou v. Dutchess Beer Distribs., Inc., 300 F.3d 217, 222 (2d Cir. 2002).  "Because the FLSA is a remedial law, exemptions to the overtime pay requirement are narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit."  In re Novartis Wage and Hour Litig., 611 F.3d 141, 150 (2d Cir. 2010) (quotation marks and citations omitted).

professional capacity").  Under the United States Department of Labor's ("DOL") Regulations the

administrative employee exemption applies to any employee:

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . .;
(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer . . . ; and
(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).  For the purpose of this exemption the Regulations define "primary duty" as

the principal, main, major or most important duty that the employee performs.  Determination of an

employee's primary duty must be based on all the facts in a particular case, with the major emphasis

on the character of the employee's job as a whole.  Factors to consider when determining the

primary duty of an employee include, but are not limited to, the relative importance of the exempt

duties as compared with other types of duties; the amount of time spent performing exempt work;

the employee's relative freedom from direct supervision; and the relationship between the

employee's salary and the wages paid to other employees for the kind of nonexempt work

performed by the employee.  29 C.F.R. § 541.700(a).  The time an employee spends performing

exempt work is an important but non-determinative factor in determining an employee's primary

duty.  29 C.F.R. § 541.700(b).

Under the DOL's Regulations,

To qualify for the learned professional exemption, an employee's primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. This primary duty test includes three elements:
(1) The employee must perform work requiring advanced knowledge;
(2) The advanced knowledge must be in a field of science or learning; and
(3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

12

29 C.F.R. § 541.301(a).

The Regulations explain that,

[t]he use of manuals, guidelines or other established procedures containing or relating to highly technical, scientific, legal, financial or other similarly complex matters that can be understood or interpreted only by those with advanced or specialized knowledge or skills does not preclude exemption under section 13(a)(1) . . . . The section 13(a)(1) exemptions are not available, however, for employees who simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry or set of circumstances.

29 C.F.R. § 541.704.

They further state that "[r]egistered nurses who are registered by the appropriate State examining board generally meet the duties requirements for the learned professional exemption." 29 C.F.R. § 541.301(e)(2).  In addition, an employer is not liable for failing to pay overtime wages if it did so "in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation" of the DOL.  29 U.S.C. § 259(a).

California law treats overtime exemptions for administrative and professional workers slightly differently.[7]  Pertinently, the administrative employee exemption applies to those:

(a) Whose duties and responsibilities involve []:
    (i) The performance of office or non-manual work directly related to management policies or  general business operations of his/her employer or his/her employer's customers; [and]
                                    ***
(b) Who customarily and regularly exercises discretion and independent judgment; and
(c) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity . . . ; or
(d) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; or

---

[7] As with the FLSA, under California law, the employer bears the burden of demonstrating that an exemption applies, as the application of an exemption is an affirmative defense. See Wang v. Chinese Daily News, Inc., 231 F.R.D. 602 (C.D. Cal. 2005) (citations omitted).

13

(e) Who executes under only general supervision special assignments and tasks; and

(f) Who is primarily engaged in duties that meet the test of the exemption.  The activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201-205, 541.207-208, 541.210, and 541.215 . . . . The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.

(g) Such employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment.

IWC Wage Order 4-2001(1)(A)(2); see also CAL. LAB. CODE § 515(a).  Notably, under California law, there is no presumed exemption for registered nurses.  See IWC Wage Order 4-2001(3)(f).

California law applies a test akin to but not identical with the federal regulations' "primary duty" test.  Compare IWC Wage Order 4(2)\(N) (defining "primarily" as "more than one-half the employee's work time") with 29 C.F.R. § 541.201, 541.700 ("'primary duty' means the principal, main, major or most important duty that the employee performs"); see Ramirez v. Yosemite Water Co., Inc., 20 Cal. 4th 785 (1999) (interpreting Wage Order No. 7-80 and finding that under state law an employee's exempt status must be determined based on quantitative analysis of her duties, rather than the qualitative analysis associated with the federal regulations).

**B. Rule 23 Class Actions**

Rule 23 class actions are designed to promote efficiency and economy of litigation, and to preserve small claims through aggregation without sacrificing procedural fairness or unfairness.  Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 553 (1974); Amchem Prods. v. Windsor, 521 U.S. 591, 614 (1997); Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 560 (2d Cir. 1968) ("class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of

14

obtaining redress for claims which would otherwise be too small to warrant individual litigation."). Rule 23(a) lists four prerequisites for class certification: "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." Amchem, 521 U.S. at 613 (quoting FED. R. CIV. P. 23(a)).  A district court shall grant certification only if plaintiffs sustain their burden of demonstrating, by a preponderance of the evidence, that the prerequisites are met.  See Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982) (class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied); In re Initial Public Offerings Securities Litig., 471 F.3d 24, 40-41 (2d Cir. 2006) ("In re IPO"); Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008) ("preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements").

Finally, assuming the prerequisites for class certification are met, a class action may be maintained only if at least one subsection of Rule 23(b) is satisfied.  See FED. R. CIV. P. 23(b); Amchem, 521 U.S. at 614; In re Simon II Litig., 407 F.3d 125, 132 (2d Cir. 2005).  Throughout this entire analysis, a court's determination as to whether the requirements for class certification are met involves mixed questions of fact and law and may require the court to resolve factual disputes that implicate merits issues.  In re IPO, 471 F.3d at 40-41.  To the extent that such overlap occurs, a district court must reach those issues before certifying a Rule 23 class.  Id.

**IV.     MOTIONS TO CERTIFY AND DENY CERTIFICATION FOR RULE 23 CLASSES**

The main points of dispute as to the appropriateness of class certification for each of the classes are the degree to which there is variation between the relevant job descriptions; the amount of variation within a given job category, and relatedly, the degree of correspondence between a job description and the work each employee actually performs; the extent to which putative class members exercise discretion in performing their duties, and the affect that policies, manuals, and other tools provided by Defendant have on that exercise of discretion; and whether employees used their professional training and expertise as registered nurses. The parties also dispute the adequacy of the Named Plaintiffs' to represent their respective classes.

All parties agree that the actual duties performed by putative class members are key to class certification.  Plaintiffs suggest that the "primary duty" of all the nurses at issue are uniform: "Utilization reviews consist of collecting medical information (either by telephone, fax, email, or other means) that a hospital or healthcare provider has gathered about an insured to assist in authorizing requests for certain health insurance benefits or services"; comparing that information against WellPoint's specific criteria; and either granting the request if the information matches the criteria, or passing it to another reviewer, without any independent input from the nurses.  Pls.' Certification MOL at 7-10.  Similarly, "Case management duties consist of communicating with the insured, the healthcare provider, or others, to collect information about the insured to assist in coordinating health insurance benefits and services to make sure the insureds receive care consistent with typically pre-determined 'care plans' scripted to fit specific medical conditions." Id. at 11.

Defendant claims that certification based upon the shared characteristic of putative class members' providing "case management" functions or "utilization management" functions oversimplifies and inaccurately describes the duties each nurse performs.  Opp'n to Pls.'

16

Certification Mot (Dkt. No. 214) ("Def.'s Opp'n MOL") at 2.  Defendant avers that the duties

performed vary tremendously,[8] and that no informed determination on this issue can be made

without individualized inquiries.

The parties take the same basic positions with regard to the degree of discretion putative

class members exercise in performing their duties.  Plaintiffs argue that the nurses' primary duty is

one allowing little or no discretion, and that company policies, procedures, and guidelines

essentially dictate employees' decisions and actions.  Defendant counters that nurses are expected to

exercise discretion and, in fact, do so with varying degrees depending on a number of factors.[9]  Id.

at 7-9;Whitney Decl. ¶¶ 6-10.

### A.  New York Rule 23 Class

Fay Ruggles (the "New York Named Plaintiff") seeks certification of a Rule 23 class

defined as "all persons who worked for Defendant as a utilization review nurse, case management

---

[8] Defendant notes that variations in the duties performed by Medical Management and Utilization Review Nurses include: whether a nurse has a case load on which to perform utilization review and the size of that case load; what types of reviews she performs if any; whether the nurse performs precepting (training) functions; whether the he interacts with policy holders or negotiates with providers, and the type and extent of such interaction; whether  a nurse participates in rounds; whether he performs auditing functions, reviews and/or edits WellPoint policies, prepares manuals or policies, assigns tasks and/or monitored task lists.  Def.'s Opp'n MOL at 7-14.  Defendant avers that many of these variations appear in the duties of Case Management Nurses, along with others including: whether a nurse conducts acuity assessments to determine eligibility for case management, or assessments to identify individual needs; whether he prepares specific case plans or modified existing plans, whether the nurse coordinates healthcare services; whether a he is involved in scheduling other nurses' schedules, disciplining or dealing with grievances of other nurses, or reviewing their performance.  Id. 14-20.

[9] Defendant provides examples of factors outside of specific duties performed that affect the discretion exercised by nurses.  These include whether a nurse employs guidelines or other tools in performing her work; what precise guidelines she uses, and the frequency of their use; whether she can authorize a benefit not approved by the guidelines; whether she makes recommendations to policy holders or providers; and the extent of supervision she receives.  Def.'s Opp'n MOL at 7, 21.

nurse, medical management nurse, or other job titles performing substantially similar job duties as the New York Named Plaintiff, in the state of New York at any time from six years prior to the filing of this Complaint to the entry of judgment in the case."  Am. Compl. ¶ 25.  On behalf of herself and this putative class, Ruggles seeks redress for alleged violations by Defendant of New York Labor Law Article 6 §§ 190 *et seq.*, the New York Minimum Wage Act, New York Labor Law §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142.  Id. ¶ 27(a).   The Amended Complaint announces Ruggles as the sole Named Plaintiff for the New York class.  Am. Compl. ¶ 3.  Among the issues raised by Defendant in its Motion to deny certification of a New York class (Dkt. No. 197) is whether Ruggles has standing to act as a representative.

On November 11, 2003, non-party Empire Blue Cross Blue Shield ("Empire"), at the time a subsidiary of non-party Wellchoice, Inc., hired Ruggles to work as a Case Manager I.  Bartlett Decl., Ex. A, Ruggles Dep. (Dkt. No. 197-1) at 38:14-16; Bartlett Decl., Ex. A-1, Ruggles Resume (Dkt. No. 197-1, Ex. 1) at 2; Pekrol Decl. ¶ 5.  Ruggles was terminated on August 16, 2005.  Ruggles Dep. 4:17-18; Ruggles Resume at 2.  In September 2005, WellPoint announced a merger deal whereby it would acquire Wellchoice, Inc., including Empire.  The merger occurred on December 27, 2005.  Pekrol Decl. ¶ 5; Mem. in supp. Mot. to deny NY class (Dkt. No. 197) at 5.

In its Answer (Dkt. No. 170), Defendant "admits that it employed the named Plaintiffs.  WellPoint admits that it employed Plaintiff Ruggles in the job title Case Manager . . . ."  In its Motion to deny certification  of a New York class, however, Defendant asserts that Plaintiff Ruggles lacks standing to represent the proposed New York Rule 23 class as she "never worked for the named Defendant in this case, WellPoint Inc.  The entity for which she worked is not a party to

this litigation, and she, therefore, stands apart from the WellPoint employees she seeks to represent." Id. at 12-13.  Defendant asserts that there is "no evidence in the record to tie Empire's potential acts or omissions to WellPoint for the period of time that Empire employed Ruggles." Id. at 13.

The Named Plaintiffs insist that because WellPoint admitted in its Answer that it employed Ruggles, it is bound to that position throughout the litigation.  Pls.' Consol. Response. (Dkt. No. 213) at 19-20 (citing N.L.R.B. v. Consol. Bus Transit, Inc., 577 F.3d 467, 474 (2d Cir. 2009)).  While an admission by a party binds that party, that admission does not engender Ruggles with standing as a class representative, nor does it bar WellPoint from contesting her adequacy as a representative.

"[A] class representative must be part of the class" that she purports to represent.  Falcon, 457 U.S. at 156 (1982) (citation and internal quotation omitted); Norwalk Core v. Norwalk Redevelopment Agency, 42 F.R.D. 617, 622 (D. Conn. 1967) modified in part and rev'd on other grounds by Norwalk Core v. Norwalk Redevelopment Agency, 395 F.2d 920, 937-38 (2d Cir. 1968).  "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."  O'Shea v. Littleton, 414 U.S. 488, 494 (1974); Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 216 (1974); Cordes & Co. Fin. Servs, Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 99 (2d Cir. 2007).

Ruggles is not part of the New York class; regardless of Defendant's Answer, she is not a "person[] who worked for Defendant as a utilization review nurse, case management nurse, [or]

medical management nurse . . . ."[10]  Am. Compl. ¶ 25.  The Court therefore grants Defendant's

Motion to deny Rule 23 New York class certification (Dkt. No. 197) and denies without prejudice

that portion of Plaintiffs' Motion to certify Rule 23 class (Dkt. No. 204) seeking certification of a

New York class.[11]

### B. Illinois Rule 23 Class

Harriet Childress, and Nancy Coleman (the "Illinois Named Plaintiffs") seek certification of

a Rule 23 class defined as "all persons who worked for Defendant as a utilization review nurse, case

management nurse, medical management nurse, or other job titles performing substantially similar

job duties in the state of Illinois at any time from three years prior to the filing of this Complaint . . .

."[12]  Am. Compl. ¶ 43.  On behalf of themselves and this putative class, the Illinois Named Plaintiffs

allege that Defendant violated the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. § 105/1, *et seq.*

and the regulations promulgated thereunder, Ill. Admin. Code, tit. 56 §§ 210.100 *et seq.*  Id. ¶ 45.

From approximately September 2005 until September 2007, Harriet Childress worked as a

Medical Management I Nurse in the Unicare Utilization Management at Defendant's Sears Tower

---

[10] Because the existence of a representative with standing is a threshold question, the Court shall not undertake further analysis as to the putative Rule 23 New York class other than to note that the same deficiencies underlying Ruggles' lack of standing, namely that she does not share the characteristics by which the putative class is defined, would reemerge and be fatal to the "typicality" and "adequacy" prerequisites of Rule 23(a).

[11] The Named Plaintiffs may renew their Motion, naming a new plaintiff with standing to represent the putative New York class or submit additional evidence supporting Ruggles' standing. The Court's analysis below, however, indicates that renewal may be futile.

[12] The job titles included in this definition apparently subsume the following titles as well: Case Manager I; Case Manager II; Case Manager Lead; Case Manager Senior; Medical Management I; Medical Management II; Medical Management Lead; and Medical Management Senior, and HMC Nurse Care Manager Senior.  Welker-Finney Decl. (Dkt. No. 200-2) ¶¶ 9-10; see also Fooks Decl. ¶¶ 9-10; Havette Decl. ¶ 3.

facility in Chicago, Illinois.  Childress Decl. (Dkt. No. 204-12) ¶ 2; Nieweglowski Decl. ¶ 19.

Childress asserts that her "primary job duty was to communicate with hospitals or doctor's offices

regarding whether certain healthcare benefits and procedures were 'authorized' by WellPoint," a

task that she claims provided her with no opportunity to "provide [her] opinion or advice on what

the physician reviewer should do" and which she believes does not require the expertise of a

registered nurse.  Childress Decl. ¶¶ 3, 8, 15.  Childress states that as part of her medical

management duties, she "was responsible for completing 'preauthorization,' 'concurrent,' and

'retrospective' reviews [but] . . . . [r]egardless of the medical management function [she] performed

. . . [her] primary duties remained the same."  Id. ¶ 9.  Childress asserts that her discretion was

circumscribed by WellPoint's rigid policies and procedures and demand for strict adherence to

Milliman guidelines and WellPoint's medical policy and clinical guidelines.  Id. ¶ 4.

        Nancy Coleman was also employed as a Medical Management Nurse in Defendant's

Chicago UniCare and Healthlink business units.  Coleman Decl. (Dkt. No. 204-12) ¶ 1.  Hired in

July 2005 as a Medical Management Nurse I, she became a Medical Management II Nurse in

August 2007, a position she retained until she resigned in March 2009.  Nieweglowski Decl. ¶¶ 16,

18.  Coleman's Declaration (Dkt. No. 204-12) largely mirrors that provided by Childress regarding

the limited discretion she exercised in job duties, the determinative effect given to the Milliman

Guidelines and WellPoint policies in the authorization process, and her belief that her duties did not

require the expertise of an RN.[13]  See generally Coleman Decl.

_____

        [13] The distinct similarity in the declarations of Childress, Coleman, Billman and Hawkins
would be more illuminating if it appeared in deposition testimony.  See Dunbar v. Albertson's, Inc.,
47 Cal. Rptr.3d 83, 88 (Cal. Dist. Ct. App. 2006) (prioritizing deposition testimony "because it
reflects a witness's actual testimony on cross examination and (unlike declarations and interrogatory

Childress and Coleman assert that they are adequate representatives asserting claims typical of those of a sufficiently numerous class to justify certification, the requirements of commonality are met, as are the predominance and superiority requirements of Rule 23(b)(3).  Plaintiffs aver that "the type of uniform corporate policies that can be shown through common proof . . . will allow the fact finder to analyze WellPoint's exemption defenses based on common proof.  This evidence includes, but is not necessarily limited to: (1) common job descriptions; (2) uniform job mapping process; (3) a uniform classification decision; (4) no treatment of patients; and (5) use of guidelines, policies, and procedures."  Pls.' Consol. Response at 18.

### 1. Numerosity

Under Rule 23(a)(1) class certification is proper if joinder of all members is "impracticable," though not necessarily impossible.  FED. R. CIV. P. 23(a)(1); Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993).  In this Circuit, "numerosity is presumed at a level of 40 members."  Consol. Rail Corp. v. Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).  Those seeking certification need not identify the precise number or identity of potential class members, but must offer evidence supporting a reasonable estimate of the size of the potential class.  Robidoux, 987 F.2d at 935.  Defendant admits that the putative Rule 23 Illinois class could be as large as sixty-two people.  Mem. in Supp. of Mot. to Deny Il. Class Certification (Dkt. No. 200) ("Def.'s Il. MOL") at 14.  That is sufficiently numerous to make joinder impracticable.

### 2. Commonality

---

responses) cannot be scripted by counsel.").  No deposition testimony from these Named Plaintiffs is available.

The second prerequisite for class certification is the existence of "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2).  To demonstrate "commonality," a common question of law or fact must underlie both the named plaintiff's claim and those of the putative class.  Marisol A. by Forbes v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997).  "Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members."  Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 198 (S.D.N.Y. 1992) (citing Port Auth. Police Benevolent Ass'n v. Port Auth., 698 F.2d 150, 153-54 (2d Cir. 1983)).  A single common question may satisfy the commonality requirement if it is at the "core" of the cause of action alleged.  Dunnigan v. Metro. Life Ins. Co., 214 F.R.D. 125, 136 (S.D.N.Y. 2003) (quotations and citations omitted).

All putative Illinois class members make the same broad claim: he or she has not been paid overtime wages for work performed due to an improper and uniform classification of all persons in his or her job position as exempt.  The overriding issue, however, is not whether overtime was paid, but whether Defendant's failure to pay overtime is excused by one or more statutory exemptions, or by its good faith belief in an exemption's applicability.[14]  Thus, to satisfy Rule 23(a)(2), Plaintiffs must show that common issues of law or fact exist as to these issues.  See Myers v. Hertz, No. 02 Civ. 4325, 2007 WL 2126264, at * 4-6 (E.D.N.Y. July 24, 2007); Damassia v. Duane Reade, 250 F.R.D. 152, 155 (S.D.N.Y. 2008).

---

[14] While retaining its right to later argue the applicability of the administrative exemption, Defendant's current submissions highlight the professional exemption as a basis to deny certification of the Illinois class.  See Def.'s Il. MOL at 15.

23

Plaintiffs meet the commonality prerequisite, as shared legal and factual issues central to this litigation exist across the class.  One shared issue is whether the presumptive exemption of registered nurses applies to registered nurses who do not provide direct medical care.  See 29 C.F.R. § 541.301(e)(2); see also Johnson v. WellPoint, No. 1:06-CV-2430 at 2-3, n.3 (N.D. Ga. Mar. 30, 2009) (Dkt. No. 204-10) (denying WellPoint summary judgment in action alleging unlawful denial of overtime pay to WellPoint nurses, despite presumptive exemption of registered nurses from overtime pay requirements under the FLSA); Morrow v. Unicare, No. 1:04-CV-1774 (N.D. Ga. 2006) (Dkt. No. 204-10) (same).  All putative class members are registered nurses and are subject to commonly applicable policies that make clear that WellPoint nurses provide health benefits, health education, and other health related services for "members," but do not engage in the practice of medicine for "patients."  Whitney Decl. ¶ 19; Srey Aff., Ex. A, WellPoint Do's and Don't(s) Guidelines (Dkt. No. 204-4).  Another commonly shared issue is whether the duties listed in the job descriptions are consistent with those covered by the professional or administrative exemptions. The actual duties performed by WellPoint nurses, as opposed to the job titles held, control the determination of whether exemption was proper, see Cooke v. Gen. Dynamics Corp., 993 F. Supp. 56, 61 (D. Conn. 1997), but the job descriptions are probative of what those duties comprise.  See Damassia, 250 F.R.D. at 157; Scott v. Aetna Servs., Inc., 210 F.R.D. 261, 265, 267 (D. Conn 2002). A third common issue is whether WellPoint's decision to withhold overtime pay from the putative Illinois class was made in good faith.  29 U.S.C. § 259(a).  The evidence supports a conclusion that WellPoint classified all of the putative Illinois class members as exempt not through any individualized assessment of their actual duties, but simply on the basis of their job title.  While the ultimate determination of whether that classification was appropriate with regard to specific class

24

members may require individualized inquiry into each member's actual duties, that fact most appropriately factors into the predominance inquiry below, *infra* Sec. IV.B.5.[15]  See Damassia, 250 F.R.D. at 157; Deboissiere v. Am. Modification Agency, No. 09-CV-2316, 2010 WL 4340642 (E.D.N.Y. Oct. 22, 2010); see also Vinole v. Countrywide Home Loans, Inc., 246 F.R.D. 637 (S.D. Cal. 2007), (commonality criterion met but predominance requirement of Rule 23(b)(3) not satisfied), *aff'd* 571 F.3d at 935 (9th Cir. 2009); Campbell v PricewaterhouseCoopers LLP, 253 F.R.D. 586, 603 (E.D. Cal. 2006) (same); Kernats v. Comcast Corp., Nos. 09 C 3368, 09 C 4305, 2010 WL 4193219, at *6-8 (N.D. ILL. Oct. 20 2010) (easily finding the "low hurdle" required by the commonality requirement cleared, but conducting a more thorough analysis at the predominance inquiry).  In determining whether the commonality criterion is met, the blanket treatment of persons

---

[15] On this point several courts disagree, and have denied class certification for lack of commonality and typicality based upon similar considerations.  See, e.g., Myers, 2007 WL 2126264, at * 4-6; Edwards v. Publishers Circulation Fulfillment, 268 F.R.D. 181 (S.D.N.Y. 2010); Diaz v. Elecs. Boutique of Am., No. 04-CV-0840, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005); Morisky v. Public Serv. Elec. and Gas Co., 111 F. Supp. 2d 493 (D. N.J. 2000).  However, because the commonality prerequisite aims to determine only whether there is a "unifying thread" among the claims to warrant class certification, Kamean v. Local 363, Int'l Bhd. of Teamsters, 109 F.R.D. 391, 394 (S.D.N.Y.1986) (citations omitted), that prerequisite is satisfied "'if the class shares even one common [core] question of law or fact,' and 'factual differences in the claims of the class do not preclude a finding of commonality.'"  Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 152 (S.D.N.Y. 2002) (quoting 5 Moore's Federal Practice § 23.23(2)).  Courts denying certification on commonality (and typicality) grounds in exemption cases generally focus on (relevant) differences among class members.  However, the focus of the 23(a)(2) inquiry should be on any core similarities.  Where found, these similarities evince the existence of a class, and hence satisfy Rule 23(a)(2), see In re Frontier Ins. Grp., Inc. Secs. Litig., 172 F.R.D. 31, 40 (E.D.N.Y. 1997) ("the commonality inquiry establishes the existence of a certifiable class"); Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992) ("courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members."), though they may not suffice to maintain a class action.  See Fed. R. Civ. P. 23(b); Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002) (Rule 23(b)(3) requires the common issues satisfying Rule 23(a)(2) be "more substantial than the issues subject only to individualized proof") (citation omitted).

occupying certain job categories exists as a class-wide concern, namely whether the decision to

exempt this group was made in good faith.  Damassia, 250 F.R.D. at 156-57 (finding that "good

faith" defense subject to common proof suffices for purposes of Rule 23(a)(2) and finding further

that the decision to classify assistant managers pursuant to an agreement between defendant and its

employee union rather than systematic review of the actual duties performed supports a finding of

commonality).  In light of the above, the Court finds that Plaintiffs have met their burden under

Rule 23(a)(2) with respect to the proposed Illinois class.

### 3.  Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [be] typical of the

claims or defenses of the class."  FED. R. CIV. P. 23(a)(3).  While conceptually distinguishable, in

practice "[t]he commonality and typicality requirements tend to merge into one another . . . ."

Marisol A., 126 F.3d at 376 (citations omitted).  Both prongs are meant "to ensure that

'maintenance of a class action is economical and [that] the named plaintiff's claim and the class

claims are so interrelated that the interests of the class members will be fairly and adequately

protected in their absence.'"  Id. (quoting Falcon, 457 U.S. at 157 n.13).  Whereas the commonality

requirement is meant to ensure the existence of a certifiable class, the typicality criterion focuses on

the correspondence between the claims raised by the named parties and those of the class they seek

to represent.  See Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999)

(typicality requires "the disputed issue of law or fact occupy essentially the same degree of

centrality to the named plaintiff's claim as to that of other members of the proposed class.")

(internal quotation marks and citation omitted); In re Frontier Ins. Grp., 172 F.R.D. at 41.  This

prerequisite is met when each class member's claim arises from the same course of events, and each

class member will offer similar arguments to demonstrate a defendant's liability.  Marisol A., 126

F.3d at 376 (citations omitted).  The named plaintiffs' claims are not required to be identical with

those of each class member.  Marriott v. Cnty. of Montgomery, 227 F.R.D. 159, 172 (N.D.N.Y.

2005) (citation omitted).

        The Illinois Named Plaintiffs' claims present a close call on the issue of typicality, but

ultimately satisfies this prerequisite.  Both of the Illinois Named Plaintiffs worked as Medical

Management I or Medical Management II Nurses in a single small department in Defendant's

Chicago operations.  Yet the putative class contains "all persons who worked for Defendant as a

utilization review nurse, case management nurse, medical management nurse . . . in the state of

Illinois."  Am. Compl. ¶ 43.  Those three job titles contain several subcategories, for which there is

evidence of pertinent variation, and the decision by WellPoint to classify as exempt all Medical

Management Nurses could be viewed as distinct from its decision to similarly classify all Case

Management and Utilization Management Nurses.  These facts weigh against certification, as the

experience of the Illinois Named Plaintiffs is significantly more limited than that of the class which

they seek to represent.  See Myers, 2007 WL 2126264, at * 5-6 (where named plaintiffs worked at

the same job in the same location, their claims do not satisfy commonality or typicality with

members of a class dispersed state wide); Diaz, 2005 WL 2654270, at *5, 7.

        Nevertheless, the common issue of whether the presumptive exemption of RNs applies to

RNs who do not provide direct medical care occupies "essentially the same degree of centrality,"

Caridad,  191 F.3d at 293, for the Illinois Named Plaintiffs' claims as it does for all putative class

members.  Additionally, while the differences in location and job setting distinguish the Illinois

Plaintiffs' experience from other class members, they are not fatal to finding typicality.  See

27

Bolanos, 212 F.R.D. at 155 (typicality found where representatives and employees worked in different positions and departments on different vessels under different supervisors); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363 (S.D.N.Y. 2007) (23(a)(3) satisfied where named plaintiffs worked almost exclusively as duck feeders in a single department but purported to represent all poultry workers employed by defendant state-wide); Ross, 2010 WL 3980113, at *3 ("differences between an [assistant branch manager's] job duties at in-store and traditional branches, [and] factual distinctions between the named plaintiffs' claims and those of other class members do not necessarily undermine typicality.") (footnote and citation omitted).  Furthermore, while WellPoint may have separately arrived at its decisions to exempt Case Management Nurses, Utilization Management Nurses, and Medical Management Nurses, the fact that the Illinois Named Plaintiffs were designated exempt resulted from a decision to categorize nurses based on job title and without regard to the actual duties performed by individuals occupying that position.  These facts make their claim typical, if not identical to, those of putative class members.

### 4. Adequate Representation

The final prerequisite to class certification demands the representative parties "fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  To determine whether this criterion is satisfied, a court must consider numerous factors including whether the proposed representative understands, is involved in, and is committed to pursuing the litigation, and whether she has conflicts of interest with other members of the class.  See Marisol A., 126 F.3d at 378; Parker v. Time Warner Entm't Co., L.P., 239 F.R.D. 318, 38 (E.D.N.Y. 2007).  Additionally "certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  Gary Plastic Packaging Corp. v. Merrill

Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990) (internal citation omitted).

Relatedly, a court must also ensure that plaintiffs' counsel "fairly and adequately represent the interests of the class" and meets the criteria of Rule 23(g)(1).  FED. R. CIV. P. 23(g)(1); Hilton v. Wright, 235 F.R.D. 40, 54 (N.D.N.Y. 2006).

Defendant alleges that the variation in duties performed by nurses in the proposed Illinois class make any one member of the class an inadequate representative.  Def.'s Il. MOL at 16-17.  Further, as both of the Illinois Named Plaintiffs are former employees, Defendant claims that they cannot adequately represent current employees who may be harmed by this lawsuit insofar as they wish to maintain their current exempt status and the "flexibility" it affords them.  Id. at 17.

Childress and Coleman are adequate representatives.  Their claims share legal and factual predicates with those of the putative class and are typical of the claims raised by that class.  The evidence sufficiently shows that they understand and are committed to this litigation, and are unencumbered by conflicts of interest with the class that they seek to represent.  The Court rejects Defendant's premise that the potential desire of certain current employees to maintain their exempt status precludes a class action represented by persons who do not share that concern.  "In any substantial class action there is always the possibility that some members of the class will take a position different from that of those who have assumed the laboring oar in a litigation.  But such differences of opinion do not preclude a class action."  Rosado v. Wyman, 322 F. Supp. 1173, 1193-94 (E.D.N.Y. 1970) (citing Eisen, 391 F.2d at 563 n.7).  This does not create a conflict sufficient to render the named representatives inadequate even where, as here, opting out of the class does not protect those with divergent opinions because the litigation will necessarily impact their rights.  Id. Adequacy is not undermined where the opposed class members' position requires continuation of an

29

allegedly unlawful practice.  Thus, the Illinois Named Plaintiffs satisfy Rule 23(a)(4).  Additionally,

Nichols Kaster, PLLP is clearly competent to act as class counsel.  See Fed. R. Civ. P. 23(g)(1).

### 5.  Rule 23(b)

Having satisfied the prerequisites for class certification, Plaintiffs now must satisfy Rule

23(b)(1), (2), or (3).  Fed. R. Civ. P. 23(b).  They seek certification under Rule 23(b)(3), Pls.'

Certification MOL at 30-34, and so must establish that: (1) common questions predominate over

questions affecting individual plaintiffs; and (2) class resolution is the superior means of

adjudicating the case.  Fed. R. Civ. P. 23(b)(3); Amchem, 521 U.S. at 615.  The "predominance"

requirement "is a more demanding criterion than the commonality inquiry under Rule 23(a)."

Moore v. PaineWebber, Inc., 306 F.3d at 1252 (citing Amchem, 521 U.S. at 623); Ansoumana v.

Gristede's Operating Corp., 201 F.R.D. 81, 89 (S.D.N.Y. 2001).  To establish the predominance of

common questions, "a plaintiff must establish that 'the issues in the class action that are subject to

generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that

are subject only to individualized proof.'"  Wal-Mart Stores, Inc. v. Visa USA Inc., 280 F.3d 124,

136 (2d Cir. 2001) (quoting Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1233 (11th Cir.

2000)).  The predominance inquiry "should particularly 'focus on the liability issue . . . and if the

liability issue is common to the class, common questions are held to predominate over individual

questions.'"  Bolanos, 212 F.R.D. at 148 (quoting Dura-Bilt Corp. v. Chase Manhattan Corp., 89

F.R.D. 87, 93 (S.D.N.Y. 1981)).

Plaintiffs must additionally demonstrate that a class action is the superior mechanism for the

litigation.  Factors relevant to this showing include: (1) the interest of the members of the class in

individually controlling the prosecution or defense of separate actions; (2) the extent and nature of

any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  FED. R. CIV. P. 23(b)(3).

Plaintiffs fail to meet these standards.  First, their proposed class puts at issue between six and nine job tiles, see Welker-Finney Decl. ¶¶ 9-10; Havette Decl. ¶ 3, which show variation even by reference to the broad outlines found in the job descriptions, Srey Aff. Exs. D-E.  None of the cases relied upon by Plaintiffs in support of certification involve so many job categories.  See Damassia, 250 F.R.D. 152 (certifying class comprising a single job category); Lee v. ABC Home & Carpet, 236 F.R.D. 193 (S.D.N.Y. 2006) (same); Scott, 210 F.R.D. 261 (single job category with two subcategories); Ross, 2010 WL 3980113 (certifying two exempt job categories); Krzesniak v. Cendant Corp., No. 05-05156, 2007 WL 1795703 (certifying class comprising only one of two proposed job categories); Nerland v. Caribou Coffee Co., Inc., 564 F. Supp. 2d 1010 (D. Minn. 2007) (one category); but see Wang, 231 F.R.D. 602 (certifying a diverse class inclusive of multiple non-exempt job categories and arguably exempt reporters and account executives).[16]

---

[16] Importantly, both Lee and Scott were adjudicated prior to the Second Circuit's decisions in In re IPO, 471 F.3d 24 and Teamsters Local 445, 546 F.3d 196, from which emerge the requirement that, prior to certifying a class, district courts must resolve all factual disputes necessary to determine whether plaintiffs have shown by a preponderance of the evidence that each Rule 23 requirement has been met.  Wang and Krzesniak were decided prior to In re Wells Fargo Home Mortgage Overtime Pay Litig., 571 F.3d 953 (9th Cir. 2009) (repudiating aspects of Wang), and under a less rigorous standard where "all that is required is that the Court form a 'reasonable judgment' on each certification requirement."  See Krzesniak, 2007 WL 1795703, at *6 (quotation marks and citation omitted); Wang, 231 F.R.D. at 606 (refusing "'to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.'") (quoting Eisen, 417 U.S. at 177).  Nerland, was also decided under this less rigorous standard.  See 564 F. Supp. 2d at 1027.

Next, and more importantly, even if the Court recognized only the overlap in the job descriptions, "[w]hether an employee is exempt is determined by the employees actual work activities, not by the employer's characterization of those activities through a job title or job description." Cooke, 993 F. Supp. at 61. Plaintiffs argue that despite this fact, "[c]ourts routinely certify misclassification cases like this one," and "[i]n overtime cases like this, the predominance factor is easily met." Pls.' Certification Mem. at 26, 32. This is a gross overstatement of the law. See Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 946 n.13 (9th Cir. 2009). First, numerous courts considering certification in overtime cases reach exactly the opposite conclusion. See, e.g., Edwards, 268 F.R.D. 181 (S.D.N.Y. 2010); Myers, 2007 WL 2126264, at * 4-6; Diaz, 2005 WL 2654270 (denying certification for lack of commonality without reaching predominance inquiry); Deboissiere, 2010 WL 4340642, at *3-4; Vinole v. Countrywide Home Loans, Inc., 246 F.R.D. 637 (S.D. Cal. 2007), aff'd 571 F.3d at 935; Weigele v. FedEx Ground Package Sys., Inc., 267 F.R.D. at 622; Campbell, 253 F.R.D. 586; Jimenez v. Domino's Pizza, 238 F.R.D. 241, 251 (C.D. Cal. 2006); Morisky, 111 F. Supp. 2d 493; Dunbar, 47 Cal. Rptr.3d 83. Second, none of the cases Plaintiffs cite for support involve the learned professional exemption defense that Defendant employs, nor a class of persons presumptively covered by that exemption.[17]

Critical to the applicability of the professional exemption are considerations of what activities a nurse engages in, whether such work requires advanced knowledge in a field of science or learning, what guidelines or tools a nurse employs, how often she consults them, and in what manner she does so. See 29 C.F.R. § 541.301(a); 29 C.F.R. § 541.704. As noted, the record shows

---

[17] Wang v. Chinese Daily News, Inc., 435 F. Supp. 2d 1042 (C.D. Cal. 2006), which Plaintiffs cite, does involve the "creative professional exemption," which follows a different test than the learned professional exemption. Compare 29 C.F.R. § 541.302 and 29 C.F.R. § 541.301.

important variation on these issues.  The additional considerations of the administrative exemption also factor in as an alternative basis for the exemption.  See Def.'s Il. MOL at 15; see generally Pls.' Certification Mem.  These include, "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision."  29 C.F.R. § 541.700(a).  Here too, the record evinces some variation.  Under these circumstances, individualized inquiries would be necessary to determine the correct categorization of each nurse subsumed within the proposed class. See Vinole, 571 F.3d at 945 (noting that analysis of exemptions under the FLSA is a fact-intensive inquiry); see also Johnson v. WellPoint, No. 1:06-CV-2430 at 2-3, n.3 (N.D. Ga. Mar. 30, 2009) (Dkt. No. 204-10) (finding immaterial the deposition testimony of WellPoint nurses taken in prior case brought against WellPoint, see Morrow v. Unicare, No. 1:04-CV-1774 (N.D. Ga. 2006) (Dkt. No. 201-10), because those plaintiffs held different job titles (Nurse Case Managers) from some of the plaintiffs in the Johnson case, and because the key question of whether exemption was proper requires an analysis of the job duties of the Johnson plaintiffs with particular emphasis on the discretion and judgment that they exercised).

Plaintiffs argue that the role of commonly applicable procedures and tools, such as the Milliman Guidelines, on nurses' discretion predominate over individual concerns.  This is incorrect. The evidence shows that nurses employ different tools in different combinations and consult them with varying frequency depending upon the work each performs.  Compare, e.g., Clay Dep. (Dkt. NO. 214-14) at 56-57 (only used Milliman) and Greenberg Dep. (Dkt. No. 214-15) at 29:15 (case management nurse who "used Milliman for everything") with Marchese Dep. (Dkt. No. 214-15) at 42 (commercial group medical management nurses "don't use the guidelines as much" as other

departments); and Parisi Dep. (Dkt. No. 215-15) at 29 (used Milliman and NICU guidelines); id. at 81 (describing the training she provided as a Senior Case Management Nurse in the Retrospective Claims Unit as requiring her to explain the different guidelines nurses should use in different circumstances); Kennedy Dep. (Dkt. No. 204-14) at 16:14-16 ("we use . . . many different sets of guidelines); Sager Dep (Dkt. No. 214-15) at 49-51 (Nurses in Nation Accounts department do not use Milliman for concurrent reviews and can authorize a requested benefit even if it does not meet the guidelines);[18] cf. Edwards, 268 F.R.D. at 187 (neither commonality nor predominance demonstrated by uniform training material without evidence demonstrating that company used the training materials in a common manner).  Moreover, even if all nurses in the proposed class used the Milliman Guidelines, this would not dispense with the need for individualized inquiries.  The Regulations specifically note that reliance upon manuals does not, in itself, preclude exemption.  29 C.F.R. § 541.704.  The Milliman Guidelines explicitly state that "[u]se of the *Guidelines* requires, and never replaces, clinical judgment" and that "[p]rofessional medical judgment is required in all phases of the health care delivery and management process that should include consideration of the individual circumstances of any particular patient.  These *Guidelines* are not intended as a substitute for this important professional judgment." *Milliman Care Guidelines: Inpatient and Surgical Care*, 8th ed. (Dkt. No. 216-4) at 1, viii.  Thus, the pertinent questions of whether, in the duties performed by each nurse, advanced learning is required, and what, if any, avenues for independent judgment and discretion are left open, can be answered only through fact-intensive investigations.

---

[18] Given that Plaintiffs filed a single Consolidated Motion for class certification and states that there is negligible variation between putative class members' duties nationwide, the above sampling includes testimony from nurses in each of the three states.  Dkt. Nos. 204; 204-2 at 5-19.

34

The record evinces differences in opinion as to whether the duties performed actually require the advanced knowledge possessed by an RN.  Compare, e.g., Coleman Decl. ¶ 15; Childress Decl. ¶ 15 with Gibbs Decl. (Dkt. No. 214-4) ¶ 7; Nieweglowski Decl. ¶ 9.  This variance may simply result from differing subjective assessments, or it may result from the differing demands faced by nurses performing different tasks.  Certainly the job descriptions suggest varying levels of complexity in work performed by different grade nurses.  The deposition testimony and declarations further indicate that this may be the case.

Finally, the fact that WellPoint uniformly exempts all persons in the proposed class without itself undertaking an individualized assessment of the duties such persons performs does not mean that common issues predominate.  The existence uniform exemption does not relieve the Court from inquiring how individual employees actually spend their time, and therefore such a "policy says little about the main concern in the predominance inquiry: the balance between individual and common issues."  In re Wells Fargo , 571 F.3d at 959 (9th Cir. 2009); see also Myers, 2007 WL 2126264, at * 5, 7; Edwards, 268 F.R.D. at 184; Vinole, 571 F.3d at 946-47 (9th Cir. 2009); Weigele, 267 F.R.D. at 622.

Plaintiffs overemphasize the holding in Wang, 231 F.R.D. 602 to suggest that WellPoint's uniform exemption of all putative class nurses is proof that the duties performed by these individuals are largely uniform and supports certification.  See Pls.' Certification MOL at 27, 32.  In Wang, the court ruled that "[d]efendant cannot, on the one hand, argue that all reporters and account executives are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each reporter and account executive in order to determine whether that individual is 'exempt.'"  231 F.R.D. at 613.  The Ninth Circuit has since found that "the rule

espoused in <u>Wang</u> has little justification," <u>In re Wells Fargo</u>, 571 F.3d at 958, and held that a

"blanket application of exemption status, whether right or wrong, is not [] a rule" capable of

"facilitat[ing] common proof on otherwise individualized issues. . . . Whether such a policy is in

place or not, courts must still ask where the individual employees actually spent their time." <u>Id.</u> at

959.  As such, a "uniform exemption policy says little about the main concern in the predominance

inquiry: the balance between individual and common issues." <u>Id.</u>; <u>see also</u> <u>Campbell</u>, 253 F.R.D. at

603 (A uniform exemption policy "does not eliminate the need to make a factual determination as to

whether class members are actually performing similar duties.").  This Court adopts the Ninth

Circuit's reasoning in this respect.

Finally, Plaintiffs cite <u>Iglesias-Mendoza</u>, 239 F.R.D. at 373, for the proposition that, despite

variation in duties of representatives and persons across a class, the question of whether overtime

pay was wrongfully withheld is "about the most perfect question[] for class treatment."  Pls.'

Certification Mem. at 32.  This statement was made on fundamentally different facts than those

presented here.  In <u>Iglesias-Mendoza</u>, the class consisted of individuals employed by defendant as

poultry workers in facilities across the state.  The court found that the fact that some putative class

members "worked with one kind of animal while other class members worked with another kind of

animal, or that the named plaintiffs worked on feeding while other class members worked on

slaughtering or packaging, is not a distinction that makes a difference." <u>Id.</u> at 371.  By contrast,

where the duties at issue go directly to key aspects of the exemption, those differences are of utmost

significance to the ultimate question of whether each employee's exemption was proper.  <u>See</u>

<u>Johnson v. WellPoint</u>, No. 1:06-CV-2430 at 42-43 (finding issues of triable fact as to whether

WellPoint nurses exercised discretion and judgment and whether they required advanced medical

36

knowledge to understand the clinical information they collected and use the guidelines effectively). In such circumstances, individual issues predominate  and a class action cannot be maintained.

Plaintiffs also fail to meet the second prong of Rule 23(b)(3), that a class action be superior to other available methods of adjudicating the issues.  Because individualized proof is required to determine the correctness of Defendant's categorizing putative class members as exempt, a class action is not a superior mechanism for adjudicating their claims.  See Dunnigan, 214 F.R.D. at 142 (where the court would be required to conduct a series of mini-trials in order to determine whether each putative class member is entitled to relief, "a class action is not a feasible, let alone superior, method for the fair, efficient, and manageable adjudication of the putative class's claims for interest.") (citation omitted); see also FED. R. CIV. P. 23(b)(3)(D).

### C.  California Rule 23 Class

Maurice Billman and Karen Hawkins (collectively, "the California Named Plaintiffs") seek certification of a Rule 23 class defined as "all persons who worked for Defendant as a utilization review nurse, case management nurse, medical management nurse, or other job titles performing substantially similar job duties in the state of California at any time from four years prior to the filing of this Complaint to the entry of judgment in the case."[19]  Am. Compl. ¶ 34.  On behalf of themselves and this putative class, the California Named Plaintiffs seek redress for what they allege are Defendant's violations of the California Labor Code §§ 510 and 1198, and California Wage Order No. 4 (8 C.C.R. § 1140, as amended); California Labor Code §§ 226 and 1174, and the

---

[19] Subsumed under these job titles are the following job categories: Nurse Case Manager I, Nurse Case Manager II, Nurse Case Manager Senior, Nurse Case Manager Lead, Nurse Medical Management I, Nurse Medical Management II, Nurse Medical Management Senior, and Nurse Medical Management Lead.  Welker-Finney Decl. (Dkt. No. 200-2) ¶ 7-8.

California Wage Orders; California Labor Code §§ 201, 202, and 203; the California Unfair

Competition Law set forth in the Business and Professions Code § 17200 et seq.  Id. ¶ 36.

Maurice Billman began working for Anthem, Inc. in July 1999 and, following Anthem's

merger with WellPoint Health Networks, came to work for WellPoint in its Camarillo, California

"state sponsored business" department.  Billman Decl. (Dkt. No. 204-13) ¶¶ 2-3.  From October

2005 to May 2008, Billman held the position of Medical Management Nurse Senior at WellPoint's

Camarillo facility.  Welker-Finney Decl. (Dkt. No. 198-3) ¶ 11.  Billman's account of his duties and

experience at WellPoint mirrors that of Coleman and Childress.  Billman Decl.  Billman, who

suffered from sleep apnea, was terminated in May 2008 for sleeping on the job.  Framptom Dep.

(Dkt. No. 198-1, Ex. B) 61:10-15, Ex. C.  He subsequently sued WellPoint for disability

discrimination.  Mem. in Supp. Mot. to Deny Ca. Class at 8.  That claim appears to have been

resolved in 2009.  Billman Second Decl. (Dkt. No. 213-8) ¶¶ 4, 6.

Beginning in September of 2000, Karen Hawkins acted as a Case Manager within

WellPoint's Utilization Management department in WellPoint's Camarillo, California location.  In

May 2004, she changed positions, acting as Nurse Medical Management Senior for the Prior

Authorization department in the State Sponsored Business unit, also in Camarillo.  She switched

positions again in October 2006 to work as a Medical Management Nurse Senior in the Specialty

Pharmacy Medical Management department in WellPoint's Newbury Park and Camarillo,

California locations.  She retained this position, with a brief stint as Medical Management Lead in

the same department until she resigned in April 2009.  Hawkins' account of her experience at

WellPoint, which she provides by way of declaration, mirrors those of the other Named Plaintiffs in

all relevant respects.  Hawkins Decl.  She subsequently filed a disability discrimination clam against

38

WellPoint.  Hawkins Decl. (Dkt. No. 204-13) ¶ 2; Hawkins Second Decl. (Dkt. No. 213-8) ¶¶ 4-5;

Sparks Decl. (Dkt. No. 198-7, Ex. 12) ¶¶ 15-22; Gibbs Decl. (Dkt. No. 198-7, Ex. 8) ¶ 12.

The Court's analysis of the proposed California class tracks, albeit inexactly, the foregoing

analysis of the proposed Illinois class.  The demands of Rule 23 do not change, though variations in

the relevant state law and among the named representatives, as well as Defendant's reliance upon

California's administrative rather than professional exemption, force some additional discussion.[20]

### 1.  Numerosity

Defendant acknowledges that the California class is sufficiently numerous for Rule 23

certification.  Mot. to Deny CA Class at 2, 5.

### 2.  Commonality

One of the key common legal issues shared by members of the proposed Illinois class is not

applicable to the proposed California class.  Under California law, there is no presumption that

registered nurses are exempt from the overtime pay requirements. See IWC Wage Order 4-

2001(3)(f).  Thus, there is no common question as to whether such a presumption applies where

such nurses do not provide direct medical care.  Nevertheless, all putative California class members

share the salient factual predicate of being employed as nurses but not providing direct medical

services.  That fact holds relevance as it is probative of the duties actually performed and relates to

the issue of whether they perform "work along specialized or technical lines requiring special

training, experience, or knowledge."  See IWC Wage Order 4-2001(1)(A)(2).  Other shared legal

and factual issues also exist that satisfy Rule 23(a)(1).

---

[20] While retaining its right to later argue the applicability of the professional exemption, Defendant's current submissions highlight the administrative exemption as a basis to deny certification of the California class.  See Mem. in supp. Mot. to deny Ca. Class at 17 n.68.

As with the proposed Illinois class, each member of the California class raises the same broad claim: his or her exemption from overtime pay requirements is improper.  As with the Illinois class, under California law, the answer to this question requires looking into the duties each putative class member performed.  See IWC Wage Order 4-2001(1)(A)(2); CAL. LAB. CODE § 515(a).  And, while the common job descriptions do not substitute for that inquiry, it is common proof that is probative of what those duties entailed.  Similarly, the various guidelines used by putative class members and the corporate policies to which putative class members are subject present shared issues.  Another issue common across the class is whether Defendant complied with its record keeping and wage statement obligations under state law.  See CAL. LAB. CODE § 226.  In sum, Plaintiffs satisfy Rule 23(a)(2).

### 3.  Typicality

The California Named Plaintiffs' claims are typical of those of the proposed class and satisfy the Rule 23(a)(3) prerequisite. The California Named Plaintiffs each allege claims in which the above-noted common issues factor with the same degree of centrality as those of the putative class.

### 4.  Adequate Representation

Defendant challenges the adequacy of the California Named Plaintiffs.  See Mem in Supp. Mot to Deny Ca. Class at 18-20.  In addition to repeating arguments disposed of in the proposed Illinois class analysis, Defendant asserts that the discrimination lawsuits that the Named California Plaintiffs have against WellPoint may distract them from vigorously defending the rights of putative class members and divulge a conflict with those who are happy to work at WellPoint.  Id. at 20.  This arguments is without support.  There is no indication that the California Named Plaintiffs'

lawsuits will affect their attention and diligence in this matter.  Billman's suit has been resolved and

Hawkins attests to her intention to vigorously prosecute this matter.  The Named California

Plaintiffs satisfy Rule 23(a)(4).

### 5.  Rule 23(b)(3)

The same considerations leading to the Court's finding a lack of predominance of common

issues with regard to the Illinois class, apply with greater force to the California class.  Under

California law, the administrative employee exemption applies where 50% or more of an

employee's time is spent on exempt activities.  See IWC Wage Order 4-2001(1)(A)(2)(f) ("The

work actually performed by the employee during the course of the workweek must, first and

foremost, be examined and the amount of time the employee spends on such work . . . ."); Ramirez,

20 Cal. 4th 785 (1999) (California law "requires only more than 50 percent in exempt activities in

order to qualify" for exemption).  That California law requires a quantitative analysis of an

employee's duties, rather than the qualitative analysis associated with the federal regulations to

determine the applicability of the exemption, see Ramirez, 20 Cal. 4th at 797-98, reinforces the

conclusion that Rule 23(b)(3) is not met here.  The (in)correctness of putative class members'

designation as exempt can only be determined through individual inquiries investigating the amount

of time each member spent on exempt activities; these fact intensive inquiries will overwhelm the

issues common to the class.  See Vinole, 246 F.R.D. 637, 641, *aff'd* 571 F.3d 935; Weigele, 267

F.R.D. at 622 (where employees perform numerous tasks and spend varying degrees of time on

each, individualized inquiries are necessary to determine the appropriateness of exemption status,

making the individual issues predominate over those that are common across the proposed class);

Jimenez, 238 F.R.D. at 251 n.9 ("the question presented here is not whether the tasks performed are

41

exempt but rather how much time is spent on each task, which is necessarily an individualized

inquiry"); Campbell, 253 F.R.D. 586.  Under these circumstances, the predominance criterion of

Rule 23(b)(3) is unmet, and class certification is not warranted.

## V.    CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that Plaintiffs' Consolidated Motion for Rule 23 class certification  (Dkt. No.

204) is **DENIED**; and it is further

**ORDERED**, that Defendant's Motions to deny class certification of a New York class (Dkt.

No. 197); a California class (Dkt. No. 198); and an Illinois class (Dkt. No. 200) are **GRANTED**;

and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:   February 22, 2011
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

42